**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website:  https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILED
SUPREME COURT
STATE OF WASHINGTON
4/20/2021
BY SUSAN L. CARLSON
CLERK

# THE SUPREME COURT OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) ) ) | **ORDER DENYING FURTHER RECONSIDERATION** |
| Respondent, | ) ) | No. 96873-0 |
| v. | ) ) | |
| SHANNON B. BLAKE, | ) ) | |
| Petitioner. | ) ) ) ) | |

The Court considered the "STATE'S MOTION TO RECONSIDER OPINION FILED FEBRUARY 25, 2021" and the Petitioner's "ANSWER TO MOTION FOR RECONSIDERATION". The Court entered an "ORDER AMENDING OPINION" in this case on April 20, 2021.

Now, therefore, it is hereby

ORDERED:

That further reconsideration is denied.

DATED at Olympia, Washington this 20th day of April, 2021.

For the Court

_González C.J._
CHIEF JUSTICE

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILED
SUPREME COURT
STATE OF WASHINGTON
4/20/2021
BY SUSAN L. CARLSON
CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, Respondent, v. SHANNON B. BLAKE, Petitioner. | NO. 96873-0 ORDER AMENDING OPINION |

It is hereby ordered that the majority opinion of Gordon McCloud, J., filed February 25, 2021, in the above entitled case is amended as indicated below. All references are to the slip opinion.

On page 24, line 5 of footnote 13, after "communities)." delete "But the interpretive rule of legislative acquiescence bars us from disregarding that body's failure to amend the drug possession statute for the last 40 years." and insert:

> But the "fundamental objective" of statutory interpretation is "to ascertain and carry out the Legislature's intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). And the legislature has made its intent clear by its failure to amend the drug possession statute for the last 40 years.

On page 27, line 1, after "(1982))." delete "But the history summarized above shows that the 'issue' of interpreting RCW 69.59.4013's as a strict liability statute can no longer be 'resolved'

*State v. Blake*, No. 96873-0 (order amending opinion)

by this court 'on statutory grounds.'" and insert:

> But any attempt to resolve the "issue" of interpreting RCW 69.50.4013 as a strict liability statute by reading into it a silent mens rea element would run afoul of the "fundamental objective" of statutory interpretation: "to ascertain and carry out the Legislature's intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

DATED this __20th__ day of April, 2021.

_____
CHIEF JUSTICE

APPROVED:

_____          _____
                                                  Gordon McCloud, J.

_____          _____
                                                  Yu, J.

_____          _____
                                                  Montoya-Lewis, J.

_____          _____
                                                  Whitener, J.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
FEBRUARY 25, 2021

*Gonzáles, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
FEBRUARY 25, 2021

*Susan L. Carlson*
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 96873-0 |
| Respondent, | |
| v. | EN BANC |
| SHANNON B. BLAKE, | |
| Petitioner. | Filed: February 25, 2021 |

GORDON McCLOUD, J.—Washington's strict liability drug possession statute, RCW 69.50.4013, makes possession of a controlled substance a felony punishable by up to five years in prison, plus a hefty fine; leads to deprivation of numerous other rights and opportunities; and does all this without proof that the defendant even knew they possessed the substance. This case presents an issue of first impression for this court: Does this strict liability drug possession statute with these substantial penalties for such innocent, passive conduct exceed the legislature's police power? The due process clauses of the state and federal

constitutions,[1] along with controlling decisions of this court and the United States

Supreme Court, compel us to conclude that the answer is yes—this exceeds the

State's police power.

## INTRODUCTION

We begin with the rule that state legislatures have the police power to

criminalize and punish much conduct. But the due process clauses of the state and

federal constitutions limit that power. The key limit at issue here is that those due

process clause protections generally bar state legislatures from taking innocent and

passive conduct with no criminal intent at all and punishing it as a serious crime.

Unfortunately, that is exactly what RCW 69.50.4013, the strict liability

felony drug possession statute, does. And it is the only statute in the nation to do

so. We therefore conclude that it violates the state and federal constitutions.

To be sure, at one time, it might have been possible for this court to avoid

this constitutional issue by interpreting RCW 69.50.4013 as silently including an

intent element and thereby saving it from unconstitutionality. But that time has

long since passed. First, in 1981, we held that our legislature intended drug

possession to be a strict liability felony in *State v. Cleppe*. 96 Wn.2d 373, 635 P.2d

435 (1981). Then, 16 years ago, and 23 years after *Cleppe*, we reiterated *Cleppe*'s

---

[1] WASH. CONST. art. I, § 3; U.S. CONST. amend. XIV.

*State v. Blake (Shannon B.)*, No. 96873-0

statutory interpretation holding: that our legislature intended drug possession to be a strict liability felony. *State v. Bradshaw*, 152 Wn.2d 528, 98 P.3d 1190 (2004). Given the interpretive principles of legislative acquiescence and stare decisis, only the legislature, not the court, can now change the statute's intent.

This court, however, is the one that must evaluate whether that statute comports with constitutional due process guaranties. We have been asked to do that today, and we hold that the statute violates those guaranties. Attaching the harsh penalties of felony conviction, lengthy imprisonment, stigma, and the many collateral consequences that accompany every felony drug conviction to entirely innocent and passive conduct exceeds the legislature's powers.

FACTS

In 2016, police executed a search warrant in Spokane, Washington, seeking evidence of stolen vehicles. Verbatim Report of Proceedings (VRP) at 19. They arrested three people on the property, including Shannon Blake. Clerk's Papers (CP) at 13; VRP at 40. At the jail, a corrections officer discovered a small baggy containing methamphetamine in the coin pocket of Blake's jeans. VRP at 47-48. The State charged Blake with possession of a controlled substance in violation of RCW 69.50.4013. CP at 18.

At trial, Blake relied on the judicially created affirmative defense of "unwitting possession." She testified that a friend had bought the jeans

3

secondhand and given them to Blake two days before Blake's arrest. VRP at 76.

Blake said she had never used methamphetamine and did not know the jeans had

drugs in the pocket. *Id.* She acknowledged that the drugs had been "on [her]" on

the day of her arrest. *Id.* at 83. Blake's boyfriend also testified that Blake did not

use drugs and that she had received the jeans from a friend. *Id.* at 89-90.

The trial court served as trier of fact. CP at 20. It found that Blake had

"possess[ed]" methamphetamine on the day in question. CP at 26. Consistent with

the law as interpreted in *Cleppe* and *Bradshaw*, it did not make any findings as to

whether the State had proved that Blake's possession was intentional or knowing.

It did conclude, however, that Blake had not met her burden to prove that her

possession was unwitting. VRP at 108; CP at 26. Accordingly, the trial court

found Blake guilty.

On appeal, Blake argued that "requiring her to prove unwitting possession to

[sic] the charged offense violates due process." *State v. Blake*, No. 35601-9-III,

slip op. at 1 (Wash. Ct. App. Jan. 22, 2019) (unpublished),

http://www.courts.wa.gov/opinions/pdf/356019_unp.pdf. Relying on *Cleppe* and

*Bradshaw*, the Court of Appeals held that "[t]he crime of possession of a

controlled substance does not require a mens rea element" and the defense's

burden to show unwitting possession does not violate due process. *Id.* at 6 (citing

4

*Bradshaw*, 152 Wn.2d at 532; *Cleppe*, 96 Wn.2d at 380; *State v. Schmeling*, 191 Wn. App. 795, 365 P.3d 202 (2015)).

We granted review. *State v. Blake*, 194 Wn.2d 1023 (2020).

ANALYSIS

I. THE STRICT LIABILITY DRUG POSSESSION STATUTE EXCEEDS THE STATE'S POLICE POWER BY IMPOSING HARSH FELONY CONSEQUENCES ON INNOCENT NONCONDUCT WITH NO MENS REA

The basic drug possession statute at issue in this case states, "It is unlawful for any person to possess a controlled substance . . . ." RCW 69.50.4013(1). The State need not prove any mens rea (mental state) element to secure a conviction for this crime. *Bradshaw*, 152 Wn.2d at 534-35. As we have held for nearly 40 years, "if the legislature had intended guilty knowledge or intent to be an element of the crime . . . it would have put the requirement in the act." *Cleppe*, 96 Wn.2d at 380.

Blake clearly argues that the constitution bars the legislature from penalizing her conduct without requiring the State to prove she had a guilty mind. Pet'r's Suppl. Br. at 18 ("[T]he legislature exceeds its power by creating a strict liability offense that lacks a public welfare rationale, has draconian consequences, and criminalizes innocent conduct."). Amici provide additional support for this argument.[2] The concurrence dismisses our discussion of this argument by claiming

---

[2] Br. of WACDL (Wash. Ass'n of Criminal Def. Lawyers) & ACLU-WA (Am. Civil Liberties Union of Wash.) as Amici Curiae in Supp. of Pet'r at 4 ("[L]egislatures

*State v. Blake (Shannon B.)*, No. 96873-0

that it was not even briefed.  Concurrence at 9-10, 22-24.[3]  As the citations above

and in the footnote below show, the concurrence is incorrect about this and the

cited portion of Blake's brief does place a question of first impression[4] before us:

whether the legislature possesses the power to punish Blake for innocent

conduct—or, more accurately, nonconduct—without proving any mental state at

all.

---

generally have flexibility to define crimes, but due process prohibits a State from defining criminal offenses in a manner that 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" (quoting *Patterson v. New York*, 432 U.S. 197, 201-02, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977))), 5 ("a legislature does not have unfettered discretion to define the elements of criminal offenses"), 7 (the legislature "never had the power to eliminate the requirement that the government prove the defendant's *mens rea*"), 20 ("The statute criminalizes innocent conduct and offends fundamental principles of justice.").

[3] The concurrence accuses our decision of raising "concerns" that are "substantially similar" to the concerns raised in *United States v. Sineneng-Smith*, __U.S. __, 140 S. Ct. 1575, 1578, 206 L. Ed. 2d 866 (2020).  Concurrence at 23.  That's not a fair comparison.  In that case, the Ninth Circuit Court of Appeals "named three *amici* and invited them to brief and argue issues framed by the panel" *but not presented at all by the briefing* and thereby assigned the parties a "secondary role."  *Sineneng-Smith*, 140 S. Ct. at 1578.  In this case, in contrast, we resolve the issue that Blake has presented and that amici have more fully briefed.

[4] This is a question of first impression because neither *Cleppe* nor *Bradshaw* addressed this issue.  The defendants in *Bradshaw* argued that *Cleppe*'s interpretation of the statute was unconstitutional "because the statute is vague, criminalizes innocent behavior, and adversely affects the right to intrastate and interstate travel."  152 Wn.2d at 539.  But we did not address those arguments on the merits; we rejected them because the briefing provided insufficient analysis.  *Id.*  Thus, the constitutionality of this statute's "criminaliz[ation of] innocent behavior" remains an open question after *Bradshaw*.

6

*State v. Blake (Shannon B.)*, No. 96873-0

A. *Due Process Clause Protections Limit the Legislature's Police Power To Criminalize Wholly Innocent and Passive Nonconduct*

"States have a legitimate interest in restraining harmful conduct and are empowered to do so under their police powers." *State v. Talley*, 122 Wn.2d 192, 199, 858 P.2d 217 (1993) (citing *City of Seattle v. Hill*, 72 Wn.2d 786, 797, 435 P.2d 692 (1967); *Minnesota ex rel. Whipple v. Martinson*, 256 U.S. 41, 45, 41 S. Ct. 425, 65 L. Ed. 819 (1921)). In 1936, we said the police power "is an attribute of sovereignty, an essential element of the power to govern, and a function that cannot be surrendered. It exists without express declaration, and the only limitation upon it is that it must reasonably tend to correct some evil or promote some interest of the state, and not violate any direct or positive mandate of the constitution." *Shea v. Olson*, 185 Wash. 143, 153, 53 P.2d 615 (1936) (citing *Bowes v. Aberdeen*, 58 Wash. 535, 542, 109 P. 369 (1910); *State ex rel. Davis-Smith Co. v. Clausen*, 65 Wash. 156, 178, 117 P. 1101 (1911); *State ex rel. Webster v. Superior Court*, 67 Wash. 37, 40, 120 P. 861 (1912); *State v. Mountain Timber Co.*, 75 Wash. 581, 584, 135 P. 645 (1913), *aff'd*, 243 U.S. 219, 37 S. Ct. 260, 61 L. Ed. 685 (1917)).

But the police power is not infinite. If it were, "the result would be a police state, and the legislative branch of the government would be omnipotent." *Peterson v. Hagan*, 56 Wn.2d 48, 53, 351 P.2d 127 (1960). Under both the state

7

and federal constitutions, a statute must have "a reasonable and substantial relation to the accomplishment of some purpose fairly within the legitimate range or scope of the police power and [must] not violate any direct or positive mandate of the constitution." *Ragan v. City of Seattle*, 58 Wn.2d 779, 783, 364 P.2d 916 (1961)[5] (citing *Nebbia v. New York*, 291 U.S. 502, 54 S. Ct. 505, 78 L. Ed. 940 (1934); *State v. Canyon Lumber Corp.*, 46 Wn.2d 701, 284 P.2d 316 (1955); *State v. Dexter*, 32 Wn.2d 551, 202 P.2d 906 (1949); *Campbell v. State*, 12 Wn.2d 459, 122 P.2d 458 (1942); *Shea*, 185 Wash. 143; *City of Seattle v. Proctor*, 183 Wash. 293, 48 P.2d 238 (1935), *overruled in part on other grounds by Chong Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019)).[6] Though *Ragan* did not identify the specific constitutional source of this test, it relied on *Nebbia*; in *Nebbia*, the Supreme Court explicitly rooted the limits of the police power in "the guaranty of due process" that "the law shall not be unreasonable, arbitrary or capricious" and

---

[5] *Ragan* and its progeny were overruled by *Chong Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019), to the extent they "requir[ed] heightened scrutiny in article I, section 3 substantive due process challenges to laws regulating the use of property." *Ragan*'s application outside the property use context remains unaffected by *Yim*.

[6] *Ragan* announced this test in a challenge to a municipal ordinance. 58 Wn.2d at 783. We have since applied the same test to decide the scope of the police power of the state legislature. *Markham Advert. Co. v. State*, 73 Wn.2d 405, 420-21, 439 P.2d 248 (1968) (quoting *Ragan*, 58 Wn.2d at 783), *overruled in part on other grounds by Yim*, 194 Wn.2d 682.

*State v. Blake (Shannon B.)*, No. 96873-0

"the means selected shall have a real and substantial relation to the object sought to be attained." 291 U.S. at 525.

In other words, prior precedent of the United States Supreme Court and of this court—including *Ragan*—holds that the State's police power is limited by the due process clause or "by constitutional protection afforded certain personal liberties." *Talley*, 122 Wn.2d at 199 (citing *Olympic Forest Prods., Inc. v. Chaussee Corp.*, 82 Wn.2d 418, 435, 511 P.2d 1002 (1973)). The "constitutional protection[s] afforded certain personal liberties" implicated by RCW 69.50.4013 are (1) the principle that "'[t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence'"[7] and (2) the rule that the government cannot criminalize "essentially innocent" conduct.[8]

With regard to the first constitutional limit, the principle that mens rea is generally a prerequisite to criminalization in "Anglo-American jurisprudence," it is certainly true that this general rule has exceptions. In Washington, for example,

---

[7] *Staples v. United* States, 511 U.S. 600, 605, 114 S. Ct. 1793, 128 L. Ed. 2d 608 (1994) (alteration in original) (quoting *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 436, 98 S. Ct. 2864, 57 L. Ed. 2d 854 (1978)).

[8] *City of Seattle v. Pullman*, 82 Wn.2d 794, 800, 514 P.2d 1059 (1973); *see also Lambert v. California*, 355 U.S. 225, 228-29, 78 S. Ct. 240, 2 L. Ed. 2d 228 (1957) (criminalization of "wholly passive" and "entirely innocent" conduct violates due process).

9

*State v. Blake (Shannon B.)*, No. 96873-0

the legislature can still create strict liability crimes in certain circumstances: "our legislature has the plenary power to criminalize conduct regardless of whether the actor intended wrongdoing." *State v. Yishmael*, 195 Wn.2d 155, 163, 456 P.3d 1172 (2020) (citing *State v. Bash*, 130 Wn.2d 594, 604, 925 P.2d 978 (1996)). In particular, the legislature may create "strict liability offenses to protect the public from the harms that have come with modern life by putting the burden of care on those in the best position to avoid those harms." *Id.* at 164 (citing *Morissette v. United States*, 342 U.S. 246, 255, 72 S. Ct. 240, 96 L. Ed. 2d 288 (1952)).

But the second constitutional limit, the rule against criminalizing "essentially innocent" conduct, does not have such exceptions, and it applies with special force to passive conduct—or nonconduct—that is unaccompanied by intent, knowledge, or mens rea.

The United States Supreme Court explained this over 60 years ago in *Lambert v. California*, 355 U.S. 225, 228, 78 S. Ct. 240, 2 L. Ed. 2d 228 (1957). In *Lambert*, Los Angeles had criminalized "remain[ing] in Los Angeles for a period of more than five days without registering" with the city. *Id.* at 226. A defendant charged with violating this ordinance was "given no opportunity to comply with the law and avoid its penalty, even though her default [failure to register] was entirely innocent." *Id.* at 229. The United States Supreme Court held that this exercise of the police power to criminalize entirely passive, innocent

nonconduct deprived defendant Virginia Lambert of her liberty without due process of law. *Id.* at 229.

The United States Supreme Court applied the same reasoning to a similar statute 15 years later. In *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972), that Court considered the constitutionality of a Florida ordinance that criminalized, among other things, "nightwalking." *Id.* at 163. The Florida Supreme Court had upheld the ordinance after construing it "not to make criminal one night's wandering, only the 'habitual' wanderer or, as the ordinance describe[d] it, 'common night walkers.'" *Id.* at 163 (citation omitted) (quoting and citing *Johnson v. State*, 202 So. 2d 852, 855 (Fla. 1967), *rev'd on other grounds*, 391 U.S. 596, 88 S. Ct. 1713, 20 L. Ed. 2d 838 (1968) (per curiam)). But the United States Supreme Court reversed. It explained that walking, strolling, and wandering—even at night—are "historically part of the amenities of life as we have known them." *Id*. at 164. It continued that criminalizing such historically innocent conduct was impermissible for many reasons, including the fact that it made "criminal activities which by modern standards are normally innocent" and did so without proof of any "intent to commit an unlawful act." *Id.* at 163. It concluded that criminalizing passive nonconduct while eliminating the requirement of a guilty mind violated due process clause protections, "cannot be squared with our constitutional standards[,] and is plainly

11

unconstitutional." *Id*. at 171. *Lambert*'s and *Papchristou*'s holdings rested on the

due process clause of the Fourteenth Amendment. 355 U.S. at 229-30; 405 U.S. at

165; U.S. CONST. amend. XIV.

Our state constitution's due process clause provides even greater protection

of individual rights in certain circumstances.[9] Thus, this court's precedent also

enforces the constitutional due process limit on the reach of the State's police

power (though often without specifying the specific constitutional source of that

limit). *City of Seattle v. Pullman*, 82 Wn.2d 794, 802, 514 P.2d 1059 (1973); *see*

*also City of Seattle v. Drew*, 70 Wn.2d 405, 408, 423 P.2d 522 (1967) ("The right

to be let alone is inviolate; interference with that right is to be tolerated only if it is

necessary to protect the rights and the welfare of others."). Restating *Ragan*'s due

process test, we have analyzed whether "the area of regulation [was] within the

government's scope of authority and [whether] the particular ordinance [was] a

reasonable regulatory measure in support of the area of concern." *Pullman*, 82

Wn.2d at 799 (citing *Markham Advert. Co. v. State*, 73 Wn.2d 405, 420-22, 439

---

[9] We "have repeatedly noted that the United States Supreme Court's interpretation of the Fourteenth Amendment does not control our interpretation of the state constitution's due process clause." *State v. Bartholomew*, 101 Wn.2d 631, 639, 683 P.2d 1079 (1984) (citing *Olympic Forest Prods., Inc.*, 82 Wn.2d 418; *Petstel, Inc. v. County of King*, 77 Wn.2d 144, 459 P.2d 937 (1969)); *see also Yim*, 194 Wn.2d at 690 ("[T]his court has a duty to recognize heightened constitutional protections as a matter of independent state law in appropriate cases." (citing *O'Day v. King County*, 109 Wn.2d 796, 801-02, 749 P.2d 142 (1988))).

P.2d 248 (1968), *overruled in part on other grounds by Yim*, 194 Wn.2d 682;

*Ragan*, 58 Wn.2d 779).  Applying that test, we have held that criminalization of

passive nonconduct without mens rea "makes no distinction between conduct

calculated to harm and that which is essentially innocent" and therefore exceeds

the State's police power.  *Id.* at 795.

The strict liability drug possession statute challenged in this case is similar

to the strict liability curfew ordinance challenged in *Pullman*.  In *Pullman*, the

defendant challenged a Seattle ordinance that prohibited "accompanying a child

during curfew hours."  *Id.*  By the language of the ordinance, "any minor under the

age of 18 could be arrested for standing or playing on the sidewalk in front of his

home at 10:01 p.m. on a warm summer evening."  *Id.*  Justice Utter, writing for the

majority, recognized that the government has an "independent interest in the well-

being of its youth" and hence has authority to "enact laws to assist those whose

primary responsibility is for the well-being of minors."  *Id.* at 800 (citing *Ginsberg*

*v. New York*, 390 U.S. 629, 639, 88 S. Ct. 1274, 20 L. Ed. 2d 195 (1968)).  But the

challenged law made "no distinction between conduct calculated to harm and that

which is essentially innocent," and it bore "an insufficient relationship to the

objective of safeguarding minors."  *Id.* at 795, 802.  We therefore concluded that

the law was "an unreasonable exercise of the police power."  *Id.* at 800, 802.  We

explained that the record before the court was "absolutely devoid of any evidence

13

*State v. Blake (Shannon B.)*, No. 96873-0

showing 'bad conduct'. . . . [T]he mere fact that the defendant was in the presence of two minors during curfew hours resulted in this prosecution." *Id.* at 802.[10]

*Pullman* stands for the rule that the state legislature's exercise of its otherwise plenary police power to criminalize entirely passive and innocent nonconduct with no mens rea or guilty mind violates the due process clause of the state and federal constitutions. But as discussed below, the legislature criminalized exactly that sort of passive and innocent nonconduct in this case.

### B. Blake Was Convicted of the Felony of Unknowing Possession of Drugs; This Is Wholly Innocent Nonconduct That Falls beyond the Legislature's Power To Criminalize

The question before us today is whether unintentional, unknowing possession of a controlled substance is the sort of innocent, passive nonconduct that falls beyond the State's police power to criminalize. Because unknowing possession is just as innocent and passive as staying out late with a juvenile or

---

[10] Criminalization of innocent nonconduct also tends to place "unfettered discretion" in the hands of police, *Papachristou*, 405 U.S. at 168, and can make people "'who look suspicious to the police'" become future criminals. *Pullman*, 82 Wn.2d at 801 (quoting *Papachristou*, 405 U.S. at 164). This risks violating other constitutional and statutory protections. *See* Research Working Grp. of Task Force on Race & Criminal Justice Sys., *Preliminary Report on Race and Washington's Criminal Justice System*, 35 SEATTLE U.L. REV. 623, 627-28, 651-53 (2012) (concluding that disproportionate minority representation in Washington's prisons is largely "explained by facially neutral policies that have racially disparate effects"); *see* Gabriel J. Chin, *Race, The War on Drugs, and the Collateral Consequences of Criminal Conviction*, 6 J. GENDER, RACE & JUST. 253, 262-70 (2002) (observing racial disparities in drug prosecutions and convictions).

*State v. Blake (Shannon B.)*, No. 96873-0

remaining in a city without registering, we hold that this felony drug possession statute is just as unconstitutional as were the laws in *Lambert, Papachristou,* and *Pullman*.

To be sure, active *trafficking* in drugs, unlike standing outside at 10:01 p.m., is not innocent conduct.  States have criminalized knowing drug possession nationwide, and there is plenty of reason to know that illegal drugs are highly regulated.  The legislature surely has constitutional authority to regulate drugs through criminal and civil statutes.

But the possession statute at issue here does far more than regulate drugs.  It is unique in the nation in criminalizing entirely innocent, *unknowing* possession. The statute would criminalize, to list a few examples:

> "a letter carrier who delivers a package containing unprescribed Adderall; a roommate who is unaware that the person who shares his apartment has hidden illegal drugs in the common areas of the home; a mother who carries a prescription pill bottle in her purse, unaware that the pills have been substituted for illegally obtained drugs by her teenage daughter, who placed them in the bottle to avoid detection."

*State v. A.M.*, 194 Wn.2d 33, 64 n.13, 448 P.3d 35 (2019) (Gordon McCloud, J., concurring) (quoting *State v. Adkins*, 96 So. 3d 412, 432 (Fla. 2012) (Perry, J., dissenting)).  "A person might pick up the wrong bag at the airport, the wrong jacket at the concert, or even the wrong briefcase at the courthouse.  Or a child might carry an adult's backpack, not knowing that it contains the adult's illegal

15

*State v. Blake (Shannon B.)*, No. 96873-0

drugs." *Id.* at 64. These examples illustrate the unreasonable disconnect between the statute's intended goals and its actual effects.

The possession statute also imposes harsh felony consequences on this passive nonconduct. Violation of this simple possession statute constitutes a class C felony. RCW 69.50.4013(2). It is punishable by a maximum of five years' imprisonment and a $10,000 fine. RCW 9A.20.021(1)(c).

In addition, all such felony convictions strip defendants of many fundamental rights, both during their time of incarceration and long afterward. *See generally* Michael Pinard & Anthony C. Thompson, *Offender Reentry and the Collateral Consequences of Criminal Convictions: An Introduction*, 30 N.Y.U. REV. L. & SOC. CHANGE 585 (2006); Tarra Simmons, *Transcending the Stigma of a Criminal Record: A Proposal to Reform State Bar Character and Fitness Evaluations*, 128 YALE L.J.F. 759 (2019); *see also* MARGARET COLGATE LOVE, RELIEF FROM THE COLLATERAL CONSEQUENCES OF A CRIMINAL CONVICTION: A STATE-BY-STATE RESOURCE GUIDE 62 (2006) (collecting state laws regulating licensure and employment of convicted persons).

And drug offenders in particular are subject to countless harsh collateral consequences affecting all aspects of their lives. Pinard & Thompson, *supra*, at 588; Gabriel J. Chin, *Race, The War on Drugs, and the Collateral Consequences of Criminal Conviction*, 6 J. GENDER, RACE & JUST. 253, 259-60 ("Those convicted of

16

drug offenses are subject to a number of additional penalties," including denial of more than 750 federal benefits, including consequences for health care, education, employment, housing, parenting, professional licenses, and others.).[11]

Imposing such harsh penalties for such innocent passivity violates the federal and state rule that passive and wholly innocent nonconduct falls outside the State's police power to criminalize. This is clear from a decision of the Louisiana Supreme Court on the constitutionality of a similar drug possession statue from 1980: *State v. Brown*, 389 So. 2d 48 (La. 1980). In that case, decided 40 years ago, the Louisiana Supreme Court recognized that a criminal statute penalizing

---

[11] *E.g*., 20 U.S.C. § 1091(r) (temporary ineligibility for student financial benefits); 21 U.S.C. § 862 (ineligibility for "the issuance of any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States"); 42 U.S.C. § 13661, 24 C.F.R. § 5.855 (denial of admission to federally assisted housing for a "reasonable time"); 21 U.S.C. § 862a (ineligibility for "assistance under any State program funded under part A of title IV of the Social Security Act," or for "benefits under the supplemental nutrition assistance program . . . or any State program carried out under" the Food and Nutrition Act of 2008); 22 U.S.C. § 2714 (ineligibility for passport during supervised release). Federal regulations make prior felony drug convictions a permissible basis for denying employment in certain jobs. *E.g.*, 48 C.F.R. § 352.237-72 ("Any conviction for a . . . drug felony[] may be grounds for denying employment or for dismissal of an employee providing any" "child care services to children under the age of 18."); 21 C.F.R. § 1301.71 (preventing "collector[s]" of controlled substances from employing anyone "who has access to or influence over controlled substances acquired by collection . . . who has been convicted of any felony offense relating to controlled substances"); 28 C.F.R. § 97.11 (felony conviction bars employment with private prisoner transportation companies); 49 C.F.R. § 1544.229 (felony conviction bars employment as airport security screener or baggage handler); 18 U.S.C. § 922 (prohibiting any person convicted of a felony from possessing, selling, shipping, transporting, or receiving a firearm in interstate commerce); 42 U.S.C. § 671(a)(20)(A)(ii) (preventing persons convicted of "drug-related offense[s]" from being approved as foster or adoptive parents for five years).

17

*State v. Blake (Shannon B.)*, No. 96873-0

unknowing drug possession violated the constitution. *Id.* at 51. The Louisiana statute had made it a crime to "'unknowingly or intentionally'" possess a controlled dangerous substance. *Id.* at 49 (quoting statute). The defendants challenged the criminalization of "unknowing" possession as unconstitutional. *Id.* The Louisiana Supreme Court agreed. It ruled that, because the statute criminalized situations where "a third party hands the controlled substance to an unknowing individual who can then be charged with and subsequently convicted . . . without ever being aware of the nature of the substance he was given," which "offend[ed] the conscious [sic]," the statute was unconstitutional. *Id.* at 51.

It is certainly true that Louisiana provides the only example of a state court striking down a passive and unknowing possession statute like RCW 69.50.4013 as unconstitutional. But that's probably because Washington is the only state that continues to criminalize this innocent nonconduct. *See Bradshaw*, 152 Wn.2d at 534 (citing *Dawkins v. Maryland*, 313 Md. 638, 647 n.7, 547 A.2d 1041 (1988)) (recognizing Washington and North Dakota as the only "exceptions" to the general trend of criminalizing only knowing possession). The North Dakota legislature, the last other state to criminalize passive unknowing possession, amended its drug possession statute by adding a "willfulness" mens rea element in 1989. N.D. CENT. CODE § 19-03.1-23; 1989 N.D. LAWS 748.

18

*State v. Blake (Shannon B.)*, No. 96873-0

Washington's strict liability drug possession statute, like Louisiana's strict liability drug possession statute, is therefore unconstitutional. It criminalizes unknowing, and hence innocent, passivity and therefore "has an insufficient relationship to the objective of" regulating drugs. *Pullman*, 82 Wn.2d at 802. The statute "goes beyond the scope of legitimate police power authority." *Id.* (citing *Lazarus v. Faircloth*, 301 F. Supp. 266 (S.D. Fla. 1969), *vacated sub nom. Shevin v. Lazarus*, 401 U.S. 987 (1971); *Alves v. Justice Court*, 148 Cal. App. 2d 419, 306 P.2d 601 (1957)).[12]

### C. The Unwitting Possession Defense Cannot Make the Statute Comply with Due Process

This court recognized the harshness of its *Cleppe* holding that RCW 69.50.4013 permissibly criminalized innocent, passive, unknowing possession. It addressed that harsh result with what it admitted was an "anomalous," *Cleppe*, 96 Wn.2d at 380, device: the court created a brand new affirmative defense out of whole cloth. *Cleppe* decided that an "unwitting possession" affirmative defense, that the defendant had the burden to prove, would "ameliorate[]" the harshness of its strict liability decision. *Id.* at 380-81.

---

[12] The concurrence warns that our approach "has the potential to overturn a number of criminal statutes to the extent [we] find[] they criminalize innocent or passive conduct." Concurrence at 22. This does not seem to be a valid fear. It's the rare Washington State statute that criminalizes innocent, passive nonconduct; most Washington laws target actual conduct and most Washington laws target people who know, or should know, that they are engaging in that actual targeted conduct.

19

Our addition of this affirmative defense to a statute that eliminated mens rea and was completely silent about affirmative defenses was "judicial legislation in its most direct form." *City of Kennewick v. Day*, 142 Wn.2d 1, 16, 11 P.3d 304 (2000) (Talmadge, J., concurring). *Bradshaw* nevertheless reiterated this affirmative defense and justified doing so because it "ameliorates the harshness of a strict liability crime." 152 Wn.2d at 538 (citing *Cleppe*, 96 Wn.2d at 380-81).

The State contends that this rewrite saves the statute. Suppl. Br. of Resp't at 17. Blake argues that the defense unconstitutionally shifts the burden of proof onto her from the State. Pet'r's Suppl. Br. at 5-7. We disagree with both of them.

The starting point for analyzing these two competing contentions is that "[t]he State is foreclosed from shifting the burden of proof to the defendant only 'when an affirmative defense . . . negate[s] an element of the crime.'" *Smith v. United States*, 568 U.S. 106, 110, 133 S. Ct. 714, 184 L. Ed. 2d 570 (2013) (quoting *Martin v. Ohio*, 480 U.S. 228, 237, 107 S. Ct. 1098, 94 L. Ed. 2d 267 (1987) (Powell, J., dissenting)); *see State v. W.R.*, 181 Wn.2d 757, 765, 336 P.3d 1134 (2014) ("[W]hen a defense necessarily negates an element of the crime, it violates due process to place the burden of proof on the defendant."). As we ruled in *Cleppe* and *Bradshaw*, the simple possession statute lacks a mens rea element entirely. Thus, contrary to the defense's argument, placing the burden to prove

20

*State v. Blake (Shannon B.)*, No. 96873-0

unwitting possession on the defendant does not "negate" any existing element of the crime.

Instead, the question is whether the legislature may constitutionally penalize passive, unknowing drug possession without a mens rea element at all. Contrary to the State's argument, the affirmative defense does not play into this analysis because it does not impact the elements that the State must prove to secure a conviction. A judicially created affirmative defense may "ameliorate the harshness" of criminalizing innocent nonconduct, but it cannot save an unconstitutional statute.

The judicially created affirmative defense therefore has no legitimate place in our analysis of whether the statute that the legislature created exceeds its police powers.

II. CONSTITUTIONAL AVOIDANCE IS IMPOSSIBLE BECAUSE THE LEGISLATURE CLEARLY INTENDED TO OMIT A MENS REA ELEMENT FROM THIS STATUTE

At one point in time, it might have been possible to avoid this constitutional problem by reading a mental element into the statute. But that time has passed. Now, in 2021, we have overwhelming evidence that the legislature intends the simple possession statute to penalize innocent nonconduct, and we have overwhelming legal authority that this violates the due process clauses of the state and federal constitutions.

21

*State v. Blake (Shannon B.)*, No. 96873-0

*A. We Usually Interpret Statutes To Avoid Constitutional Problems—*
*Including Reading in Absent Mens Rea Elements*

In general, "[w]e construe statutes to avoid constitutional doubt." *Utter ex rel. State v. Bldg. Indus. Ass'n of Wash.*, 182 Wn.2d 398, 434, 341 P.3d 953 (2015) (citing *State v. Robinson*, 153 Wn.2d 689, 693-94, 107 P.3d 90 (2005). But we construe statutes only "to avoid constitutional difficulties when such construction is consistent with the purposes of the statute." *In re Pers. Restraint of Williams*, 121 Wn.2d 655, 665, 853 P.2d 444 (1993).

In many cases, these statutory interpretation rules have led the United States Supreme Court and this court to read mens rea elements into statutes where the legislature omitted them. *See, e.g.*, *Staples v. United States*, 511 U.S. 600, 619, 114 S. Ct. 1793, 128 L. Ed. 2d 608 (1994) (interpreting a mens rea element into an unlawful firearm possession statute); *State v. Anderson*, 141 Wn.2d 357, 366, 5 P.3d 1247 (2000) (same); *State v. Boyer*, 91 Wn.2d 342, 344, 588 P.2d 1151 (1979) (interpreting a mens rea element into the unlawful delivery of a controlled substance statute).

This line of cases does not explicitly discuss the constitutional limits of the police power—it emphasizes interpreting each statute in light of "the background rules of the common law, in which the requirement of some mens rea for a crime is firmly embedded." *Staples*, 511 U.S. at 605 (citation omitted) (citing *United States*

22

*State v. Blake (Shannon B.)*, No. 96873-0

*v. U.S. Gypsum Co.*, 438 U.S. 422, 436-37, 98 S. Ct. 2864, 57 L. Ed. 2d 854 (1978)). But they reflect a consistent concern about criminalizing fundamentally innocent conduct. *Staples*, 511 U.S. at 610 ("[T]he Government ignores the particular care we have taken to avoid construing a statute to dispense with *mens rea* where doing so would 'criminalize a broad range of apparently innocent conduct.'" (quoting *Liparota v. United States*, 471 U.S. 419, 426, 105 S. Ct. 2084, 85 L. Ed. 2d 434 (1985))); *Anderson*, 141 Wn.2d at 366 (concluding that the "[m]ost compelling" reason to interpret mens rea into the statute was "the fact that entirely innocent conduct may fall within the net cast by the statute in question"); *Boyer*, 91 Wn.2d at 344 ("[W]ithout the mental element of knowledge, even a postal carrier would be guilty of the crime were he innocently to deliver a package which in fact contained a forbidden narcotic."); *see also Rehaif v. United States*, __ U.S. __, 139 S. Ct. 2191, 2196, 204 L. Ed. 2d 594 (2019) ("The cases in which we have emphasized scienter's importance in separating wrongful from innocent acts are legion.").

In part to address this concern, we have adopted a series of factors to consider in deciding whether to interpret a mens rea element into an otherwise strict liability statute. *Yishmael*, 195 Wn.2d at 166 (quoting *Bash*, 130 Wn.2d at 605-06). But the case before us today does not lend itself to this approach. Unlike the statutes in *Staples*, *Anderson*, and *Boyer*, we are not interpreting RCW

23

*State v. Blake (Shannon B.)*, No. 96873-0

69.50.4013 for the first time.[13]  Instead, we face 40 years of precedent and legislative acquiescence.

### B. *The Legislature Has Embraced Our Early* Cleppe *and* Bradshaw *Decisions Holding that RCW 69.50.4013 Imposed Strict Felony Liability*

The legislature "'is presumed to be aware of judicial interpretation of its enactments,' and where statutory language remains unchanged after a court decision the court will not overrule clear precedent interpreting the same statutory language." *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 147, 94 P.3d 930 (2004) (quoting *Friends of Snoqualmie Valley v. King County Boundary Review Bd.*, 118 Wn.2d 488, 496-97, 825 P.2d 300 (1992)).  This is why "[c]onsiderations of *stare decisis* have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and Congress remains free to alter what we have done." *Patterson v. McLean Credit Union*, 491 U.S. 164, 172-73, 109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989).

---

[13] If we were interpreting RCW 69.50.4013 for the first time, we would interpret the statute to include a mens rea element for the reasons outlined by the concurrence.  *See* concurrence at 13-19 (explaining the errors of statutory interpretation in *Cleppe* and *Bradshaw* and highlighting the harm they have caused, particularly to minority communities).  But the interpretive rule of legislative acquiescence bars us from disregarding that body's failure to amend the drug possession statute for the last 40 years.  The concurrence seems to disagree with our use of legislative acquiescence as an interpretive tool; it makes plausible arguments about its origin and weaknesses, particularly when interpreting criminal statutes.  The parties, however, have not made those arguments or asked us to overturn our precedent on that point.

24

In *Buchanan v. International Brotherhood of Teamsters*, for example, we were concerned that we had misinterpreted a statute in a prior case. 94 Wn.2d 508, 511, 617 P.2d 1004 (1980). But 22 legislative sessions had passed over 17 years and left our interpretation intact. *Id.* We therefore held that this showed that "it was and is the policy of the legislature to concur in" our prior ruling. *Id.* Despite a contrary United States Supreme Court holding interpreting identical language in a federal statute, we held that given that history of legislative acquiescence, the power to change our decision rested solely with the legislature. *Id.*

Coming back to the drug possession statute, 40 years ago, we held that "if the legislature had intended guilty knowledge or intent to be an element of the crime of simple possession of a controlled substance it would have put the requirement in the act." *Cleppe*, 96 Wn.2d at 380. Sixteen years ago, we doubled down on *Cleppe*'s interpretation, holding that "[t]he legislature ha[d] amended RCW 69.50.401 seven times since *Cleppe*" without adding a mens rea element. *Bradshaw*, 152 Wn.2d at 537. This acquiescence in our decisions made the legislative intent "so clear" that we again declined to "read a mens rea element into the mere possession statute." *Id.* at 540.

Since *Bradshaw*, the legislature and the people have amended the simple possession statute an additional four times. *See* LAWS OF 2017, ch. 317, § 15;

25

LAWS OF 2015, 2d Spec. Sess., ch. 4, § 503; LAWS OF 2015, ch. 70, § 14; LAWS OF 2013, ch. 3, § 20 (Initiative 502).  Neither has ever added a mens rea element.

We are confident that the legislature has not remained silent out of ignorance of our decisions.  *Cleppe* and *Bradshaw* are far from obscure—these decisions have been frequently cited and have impacted the lives of countless criminal defendants as drug possession cases churn through the Washington courts.  *See, e.g.*, *Day*, 142 Wn.2d at 10-11; *State v. Staley*, 123 Wn.2d 794, 799, 872 P.2d 502 (1994); *A.M.*, 194 Wn.2d at 44 (Gordon McCloud, J., concurring).  The drug statute that they interpreted has affected thousands upon thousands of lives, and its impact has hit young men of color especially hard.  *See* Research Working Grp. of Task Force on Race & Criminal Justice Sys., *Preliminary Report on Race and Washington's Criminal Justice System*, 35 SEATTLE U.L. REV. 623, 651-56 (2012) (attributing Washington's racially disproportionate criminal justice system to disparity in drug law enforcement and drug-related asset forfeiture, among many other causes).  *Cleppe* and *Bradshaw* "struck at the heart of our criminal law and social policies.  The legislative silence is thus all the more deafening." *A.M.*, 194 Wn.2d at 56 (Gordon McCloud, J., concurring).

Thus, it remains true that "[w]here an issue may be resolved on statutory grounds, the court will avoid deciding the issue on constitutional grounds," *Tunstall v. Bergeson*, 141 Wn.2d 201, 210, 5 P.3d 691 (2000) (citing *Senear v.*

*State v. Blake (Shannon B.)*, No. 96873-0

*Daily Journal-Am.*, 97 Wn.2d 148, 152, 641 P.2d 1180 (1982)).  But the history

summarized above shows that the "issue" of interpreting RCW 69.50.4013's as a

strict liability statute can no longer be "resolved" by this court "on statutory

grounds."  Because of the clarity of our prior decisions about this statute and the

legislature's lengthy acquiescence, it is impossible to avoid the constitutional

problem now (unless we overturn our own legislative acquiescence precedent as

the concurrence, but not the parties, want us to do).[14]

III.    THE STATE RETAINS THE POWER TO ENACT STRICT LIABILITY CRIMES, BUT
        THE SIMPLE POSSESSION STATUTE IS UNIQUE IN OUR STATE IN PUNISHING
        WHOLLY INNOCENT NONCONDUCT

The State compares the drug possession statute to other crimes and claims

that declaring it unconstitutional will undermine the legitimacy of those crimes,

also.  For example, the State is concerned about the continuing validity of strict

liability crimes such as child rape.  Suppl. Br. of Resp't at 9 (citing RCW

9A.44.030; *State v. Chhom*, 128 Wn.2d 739, 743, 911 P.2d 1014 (1996); *State v.

Joseph*, 3 Wn. App. 2d 365, 374, 416 P.3d 738 (2018)).

But the simple possession statute does not violate the due process clause

solely because it is a strict liability crime.  Instead, the simple possession statute

---

[14] The concurrence contends that its approach "resolves this case on narrow grounds."  *Id.* at 22.  But the concurrence's approach disregards the court's "fundamental objective" when interpreting statutes:  "to ascertain and carry out the Legislature's intent."  *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).  That is the proper role for this court.

27

*State v. Blake (Shannon B.)*, No. 96873-0

violates the due process clause because it criminalizes wholly innocent and passive

nonconduct on a strict liability basis.

We do nothing here today to disturb the legislature's power to enact strict

liability crimes. *See Yishmael*, 195 Wn.2d at 163-72 (holding unlawful practice of

law to be a strict liability crime); *see also State v. Deer*, 175 Wn.2d 725, 731, 287

P.3d 539 (2012) ("As a strict liability crime, child rape in the third degree requires

no proof of mens rea." (citing *Chhom*, 128 Wn.2d at 741-43)). Even after today,

when the legislature enacts a statute without explicit mens rea language, we will

still look to the statutory language, the legislative history, and a series of

nonexclusive factors to determine "whether the legislature intended to create a

strict liability offense." *Yishmael*, 195 Wn.2d at 164-66. Our ruling today does

not change this statutory interpretation analysis; the only reason that we have not

applied that analysis here is because the proper interpretation of RCW 69.50.4013

is already settled law.

The only thing we change here today is our view of the validity of the simple

possession law as written and interpreted by this court. The key distinction

between this simple possession statute and other, valid, strict liability crimes is that

the former statute penalizes passive and innocent nonconduct (without mens rea)

while the latter statutes do not. For example, to prove that a defendant practiced

law unlawfully, the State must show that the defendant actually "practice[d] law,

28

*State v. Blake (Shannon B.)*, No. 96873-0

or [held] himself or herself out as entitled to practice law." RCW 2.48.180(2)(a).

That conduct is, well, conduct. To be sure, *Yishmael* held that the defendant need

not *know* that his or her conduct constituted the "practice of law." 195 Wn.2d at

172. But we continued that the State must still prove the activity of practicing law,

and that, of course, requires the State to show intentional activity (not passivity).

*Id.* at 177. As we explained, "Yishmael did not dispute that he gave his clients

advice about homesteading, adverse possession, and talking with the police, and

that he offered assistance in completing documents to be filed with the county

recorder's office." *Id.* Not surprisingly, Yishmael did not claim that he had not

intended any of those actions. *Id.*

Similarly, to convict a defendant of rape of a child, the State must prove that

the defendant "ha[d] sexual intercourse with another" who is under a particular

age, depending on the degree of the crime. RCW 9A.44.073, .076, .079. Sexual

intercourse is conduct, not passivity. The crime is "strict liability" in the sense that

the State need prove only "'the doing of the acts constituting the offense,'" *State v.*

*Smith*, 3 Wn.2d 543, 553, 101 P.2d 298 (1940); the State need not prove that the

defendant knew the victim's age, which is what makes the acts constituting the

offense criminal. *State v. Johnson*, 173 Wn.2d 895, 902, 270 P.3d 591 (2012)

29

*State v. Blake (Shannon B.)*, No. 96873-0

(citing *Chhom*, 128 Wn.2d at 741, 743). But the State must certainly show the activity of sexual intercourse, not just innocent passivity.[15]

The drug possession statute is different. It does not require the State to prove any intent or even any action. And in this case, the State did not prove that Blake did anything except wear jeans that had pockets. Valid strict liability crimes require that the defendant actually perform some conduct. Blake did not. Under the due process clauses of the state and federal constitutions, the legislature may not criminalize such nonconduct.

CONCLUSION

Legislative acquiescence has locked our old interpretation of RCW 69.50.4013 into that drug possession statute. But that interpretation makes that statute criminalize innocent and passive possession, even by a defendant who does not know, and has no reason to know, that drugs lay hidden within something that they possess. The legislature's police power goes far, but not that far.

---

[15] We did hold in one case that the State may place the burden on the defendant to prove that her acts were involuntary. *Deer*, 175 Wn.2d at 731-38. That decision, however, dealt with "actus reus" of the rape charge only—specifically, it addressed whether the defendant's actions were or were not "voluntary." *Id.* at 740-41. It did not explicitly address mens rea. In this case, we deal with an issue not addressed in *Deer*: whether strict liability felony punishment for nonconduct that is both innocent *and* passive, without proof of mens rea is, constitutionally permissible at all. To the extent *Deer* relied on *Bradshaw*'s "unwitting possession" defense, all justices in the majority and concurrence now disavow *Bradshaw*'s interpretation—either because it does not save the unconstitutional criminalization of innocent nonconduct or because it was simply wrongly decided.

30

*State v. Blake (Shannon B.)*, No. 96873-0

Accordingly, RCW 69.50.4013(1)—the portion of the simple drug possession statute creating this crime—violates the due process clauses of the state and federal constitutions and is void.  We vacate Blake's conviction.

_____
Gordon McCloud, J.

WE CONCUR:

_____
González, C.J.

_____                          _____
                                                                                  Yu, J.

                                                                        _____
                                                                        Montoya-Lewis, J.

_____                          _____
                                                                        Whitener, J.

*State v. Blake (Shannon)*
(Stephens, J., concurring in part, dissenting in part)

No. 96873-0

STEPHENS, J. (concurring in part, dissenting in part)—The novel question the majority presumes to answer today about the extent of the legislature's police power is a question that appears almost nowhere in the briefing of either party. The parties recognize, as do I, that the main question before the court is whether RCW 69.50.4013, our state's model drug possession statute, should be read as having an implied mens rea element. Nearly every state to have interpreted the model statute holds that it does, and Blake urges us to embrace this interpretation. I would do so, concluding that our precedent in *State v. Cleppe*, 96 Wn.2d 373, 380, 635 P.2d 435 (1981), and *State v. Bradshaw*, 152 Wn.2d 528, 539-40, 98 P.3d 1190 (2004), is both incorrect and harmful. On this basis, I concur in the majority's decision to vacate Blake's conviction.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Where I part company with the majority is its decision to declare this court powerless to reconsider our prior statutory interpretation and to instead announce a broad constitutional holding, based on its own new test of passive nonconduct versus active criminal conduct. While we do not lightly overrule precedent, we should do so in rare cases such as this, and thereby avoid an unnecessary—and here essentially unbriefed—declaration that the legislature exceeded its constitutional authority. Because I would resolve this case based on statutory interpretation of RCW 69.50.4013, I respectfully dissent from the majority's analysis, though I concur in the result.

ANALYSIS

Shannon Blake was convicted of felony possession of a controlled substance under RCW 69.50.4013 following a bench trial; the court rejected her affirmative defense of "unwitting possession." *See State v. Blake*, No. 35601-9-III, slip op. at 2 (Wash. Ct. App. Jan. 22, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/ 356019_unp.pdf. The Court of Appeals affirmed Blake's conviction based on precedent from two decisions interpreting and upholding prior versions of Washington's model drug possession statute. *Id.* at 6 (citing *Cleppe*, 96 Wn.2d at 380 (holding legislature's omission of "knowingly" or "intentionally" from drug possession statute resulted in strict liability); *Bradshaw*,

*State v. Blake (Shannon)* (Stephens, J., concurring in part, dissenting in part), 96873-0

152 Wn.2d at 532); *see also Bradshaw*, 152 Wn.2d at 539 (rejecting due process challenge to statute as inadequately briefed).[1]

While the Court of Appeals necessarily followed this precedent, we are offered compelling reasons to reconsider it. I do not share the majority's view that the legislature's failure to correct our mistakes in *Cleppe* and *Bradshaw* renders us powerless to do so, especially in light of a plainly incorrect statutory interpretation and the harmful effects it continues to produce. I would overrule our erroneous precedent and, considering the main arguments actually briefed in this case, read an implied intent element into the drug possession statute.

I. The Drug Possession Statute Does Not Impose Strict Liability but Necessarily Presumes Knowledge and Intent

The presumption of mens rea is a common law principle foundational to our system of criminal justice. The Latin axiom *actus reus non facit reum nisi mens sit rea* has long controlled our conception of criminal law. *See generally* Francis Bowes Sayre, *Mens Rea*, 45 HARV. L. REV. 974 (1932). It stands for the basic proposition

---

[1] Relying on *State v. Schmeling*, 191 Wn. App. 795, 801-02, 365 P.3d 202 (2015), the Court of Appeals determined Blake failed to articulate specific reasons why *Schmeling* was wrongly decided and found the two out of state cases Blake cited unpersuasive. *Blake*, slip op. at 6. *Schmeling* held that "RCW 69.50.4013 does not violate due process even though it does not require the State to prove intent or knowledge to convict an offender of possession of a small amount of a controlled substance." 191 Wn. App. at 802. *Schmeling*, in turn, relies on *Cleppe* and *Bradshaw* in reaching its holding that the drug possession statute does not violate due process. *See id.*

that a criminal act does not make a person guilty unless their mind is also guilty. *See id*. at 974. Strict liability crimes—those crimes that relieve the State from proving intent or mental state—are therefore disfavored. *State v. Anderson*, 141 Wn.2d 357, 361, 363, 5 P.3d 1247 (2000); *accord Staples v. United States*, 511 U.S. 600, 606, 114 S. Ct. 1793, 128 L. Ed. 2d 608 (1994) (recognizing Congress may enact strict liability crimes, but "offenses that require no *mens rea* generally are disfavored"). When a criminal statute does not include some form of intent or mental state, courts will apply a presumption of "'scienter.'"[2] *Staples*, 511 U.S. at 605 (quoting *United States v. Balint*, 258 U.S. 250, 251, 42 S. Ct. 301, 66 L. Ed. 604 (1922)); *State v. A.M.*, 194 Wn.2d 33, 47, 448 P.3d 35 (2019) (Gordon McCloud, J., concurring) (collecting cases).

It is not uncommon for criminal statutes to omit reference to an express mental state, and courts regularly read a mens rea element into such statutes. In *Elonis v. United States*, 575 U.S. 723, 135 S. Ct. 2001, 2009, 192 L. Ed. 2d 1 (2015), the United States Supreme Court emphasized that the "'mere omission from a criminal enactment of any mention of criminal intent' should not be read 'as dispensing with

---

[2] Scienter is another term denoting intent or mental state but is generally broader than mens rea because it also describes the culpable mental state required in civil cases. One definition of "scienter" is "[a] degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission; the fact of an act's having been done knowingly, esp. as a ground for civil damages or criminal punishment." BLACK'S LAW DICTIONARY 1613 (11th ed. 2019).

*State v. Blake (Shannon)* (Stephens, J., concurring in part, dissenting in part), 96873-0

it.'" (quoting *Morissette v. United States*, 342 U.S. 246, 250, 72 S. Ct. 240, 96 L. Ed. 288 (1952)). "This rule of construction reflects the basic principle that 'wrongdoing must be conscious to be criminal.'" *Id.* (quoting *Morissette*, 342 U.S. at 252).

Though our current drug possession statute has been recodified several times, both the former and current versions of the statute omit any reference to mental state:

> (1) It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his or her professional practice, or except as otherwise authorized by this chapter.
> (2) Except as provided in RCW 69.50.4014, any person who violates this section is guilty of a class C felony punishable under chapter 9A.20 RCW.

RCW 69.50.4013. In the former version of the statute, our legislature deleted the words "knowingly or intentionally" from the uniform act. *Compare* former RCW 69.50.401(c) (1973), *with* UNIF. CONTROLLED SUBSTANCES ACT § 401(c) (1970), 9 pt. 5 U.L.A. 887 (2007). However, the legislature never stated that this omission rendered the drug possession statute devoid of any element of intent. Rather, "[t]he provisions of the common law relating to the commission of crime . . . shall supplement all penal statutes of this state." RCW 9A.04.060. Consistent with the common law's general presumption of mens rea, we should read an intent element into the drug possession statute. Doing so upholds our requirement to interpret uniform statutes in a uniform manner with other states and provides the narrowest ground on which Blake is entitled to the relief she seeks.

-5-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

A.  The Drug Possession Statute Is Required To Be Read in a Uniform Manner with Other States

The Uniform Controlled Substances Act (UCSA) requires a defendant "knowingly or intentionally" possess a controlled substance. UNIF. CONTROLLED SUBSTANCES ACT § 401(c). After the North Dakota legislature amended its own possession statute to add a "willfulness" mens rea element, Washington became the only state that interpreted its drug possession statute to not require proof of intent. *See Dawkins v. State*, 313 Md. 638, 647 n.7, 547 A.2d 1041 (1988) (recognizing Washington and North Dakota as the only states to determine "knowledge is not an element of the offense of possession of controlled substances"); N.D. CENT. CODE §19-03.1-23; 1989 N.D. LAWS 748.

To be sure, Washington is not the only state whose model drug possession statute is ambiguous in regard to an intent element. *See, e.g.*, ALASKA STAT. § 11.71.040(a)(3) (making it a class C felony to "possess[] any amount of a schedule IA controlled substance" without indicating whether "knowing" possession is required). But, at least 15 state courts have interpreted their own versions of the uniform drug possession statute to require proof of knowledge or intent. *See Walker v. State*, 356 So. 2d 672, 674 (Ala. 1977); *Bell v. State*, 519 P.2d 804, 809 n.17 (Alaska 1974); *Loy v. State*, 88 Ark. App. 91, 101, 195 S.W. 3d 370 (2004); *People v. Rubacalba*, 6 Cal. 4th 62, 67, 859 P.2d 708, 23 Cal. Rptr. 2d 628 (1993); *State v.*

-6-

*State v. Blake (Shannon)* (Stephens, J., concurring in part, dissenting in part), 96873-0

*Carbone*, 116 Conn. App. 801, 816, 977 A.2d 694 (2009); *Ayers v. State*, 97 A.3d 1037, 1041 (Del. 2014); *Duvall v. State*, 289 Ga. 540, 542, 712 S.E.2d 850 (2011); *State v. Armstrong*, 142 Idaho 62, 64, 122 P.3d 321 (2005); *State v. Faulkner*, 220 Kan. 153, 156, 551 P.2d 1247 (1976); *Neal v. State*, 191 Md. App. 297, 316, 991 A.2d 159 (2010); *State v. Ali*, 775 N.W.2d 914, 918 (Minn. Ct. App. 2009); *State v. Anderson*, 159 Mont. 344, 351, 489 P.2d 295 (1972); *State v. Sinclair*, 191 N.C. App. 485, 492, 663 S.E.2d 866 (2008); *Commonwealth v. Fortune*, 456 Pa. 365, 368-69, 318 A.2d 327 (1974); *Kabat v. State*, 76 Wis. 2d 224, 227, 251 N.W.2d 38 (1977). Some state courts have gone so far as to interpret the possession of a controlled substance to require knowledge of both the presence of the substance and the general character of the substance. *See, e.g.*, *State v. Barber*, 635 S.W.2d 342, 343 (Mo. 1982); *State v. Alexander*, 471 A.2d 216, 218 (R.I. 1984); *Clodfelter v. Commonwealth*, 218 Va. 619, 622, 238 S.E.2d 820 (1977); *Wise v. State*, 654 P.2d 116, 119 (Wyo. 1982).

Washington's Uniform Controlled Substances Act "shall be so applied and construed as to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among those states which enact it." RCW 69.50.603. "At least 48 states have adopted the Uniform Controlled Substances Act, and all but two (Washington and [at the time] North Dakota) expressly require knowledge to be

-7-

proved as an element of unlawful possession." *Bradshaw*, 152 Wn.2d at 541

(Sanders, J., dissenting) (citing *Dawkins*, 313 Md. at 646-49). This is true regardless

of whether the intent element is expressly set out in the operative language. *See,*

*e.g.*, *Walker*, 356 So. 2d at 675 (holding "knowledge is an essential element of the

offense of illegal possession of a controlled substance under the Alabama Controlled

Substance Act" despite statute's omission of whether "knowing" possession is

required). Reading Washington's possession statute to require proof of knowledge

or intent upholds RCW 69.50.603's requirement for uniformity of interpretation and

corrects an error that has made Washington an outlier among our sister states.[3]

---

[3] The majority relies on a Louisiana case that held its drug possession statute unconstitutionally imposed strict liability. *State v. Brown*, 389 So. 2d 48, 49 (La. 1980). But the majority concedes "Louisiana provides the only example of a state court striking down a . . . statute like RCW 69.50.4013 as unconstitutional." Majority at 14-15. Louisiana serves as the sole parallel because, as noted, at least 15 other state courts read a mens rea element into their respective possession statutes, thereby avoiding a constitutional conflict. Moreover, unlike our drug possession statute, the Louisiana statute explicitly made it "unlawful for any person '*unknowingly or intentionally*' to possess a controlled dangerous substance." *Brown*, 389 So. 2d at 49 (emphasis added). It was therefore impossible for the court in *Brown* to avoid the statute's constitutional implications because the statute unambiguously stated unknowing possession was unlawful. Even so, *Brown* ultimately held only "the portion of the statute making it illegal 'unknowingly' to possess [certain controlled] substance[s] is unconstitutional" and found the remainder of the statute valid. *Id.* at 51. In contrast, the majority's approach fails to save any portion of our possession statute, despite the fact that our state's more ambiguous statute contains no explicit indication that unknowing possession is unlawful.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

B.  Requiring Proof of Intent Addresses Blake's Primary Request for Relief without Reaching an Unnecessary Constitutional Holding

Blake's primary request, both in her briefing and at oral argument, is for this court to read a mens rea element into the possession statute.  *See* Pet'r's Suppl. Br. at 1 (asking this court to "hold the drug possession statute requires the prosecution to prove knowledge"); *see also* Wash. Supreme Court oral argument, *State v. Blake*, No. 96873-0 (June 11, 2020), at 5 min., 45 sec. through 5 min., 58 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/?eventID=2020061060 (in which Blake's counsel notes, "I would submit the language [in the drug possession statute] does reasonably permit [reading a mens rea into the statute]. . . . Just because the legislature does not explicitly put a mens rea element in the criminal statute does not mean they intend to eliminate it").  Blake correctly observes that such a reading is supported, in part, on "the maxim that all criminal statutes are [generally] read to have a mental element."  Pet'r's Suppl. Br. at 1.

Properly interpreting the drug possession statute to presume a knowledge element is consistent with the doctrine of constitutional avoidance.  At oral argument, Blake's counsel recognized that "this court can avoid declaring the statute unconstitutional by using the canon of constitutional avoidance or the canon of constitutional doubt and read in a knowledge element and avoid the constitutional

*State v. Blake (Shannon)* (Stephens, J., concurring in part, dissenting in part), 96873-0

question." Wash. Supreme Court oral argument, *supra*, at 1 min., 56 sec. through 2 min., 13 sec., *audio recording by* TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/?eventID= 2020061060. Absent such an element, Blake submits the statute "should be declared unconstitutional," but not for the reasons the majority offers. Pet'r's Suppl. Br. at 17. In contrast to the majority's declaration that RCW 69.50.4013 exceeds the legislature's police power, Blake's constitutional challenge is premised on the more modest notion that "due process does not permit shifting the burden to the defendant to disprove knowledge." *Id*. at 17-18 (citing *Patterson v. New York*, 432 U.S. 197, 210, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977); *Schad v. Arizona*, 501 U.S. 624, 640, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991) (plurality portion)). Either of these constitutional concerns can be avoided by our willingness to revisit our past mistake in misinterpreting the drug possession statute and to properly read into it the presumed element of intent. While this requires us to revisit *Cleppe* and *Bradshaw*, as will be explained, these cases are both incorrect and harmful and should be overturned.

-10-

*State v. Blake (Shannon)* (Stephens, J., concurring in part, dissenting in part), 96873-0

II. *Cleppe* and *Bradshaw* Were Wrongly Decided and We Are Not Required To Uphold Their Erroneous Interpretations Today

The majority rightly observes that stare decisis applies to our decisions in *Cleppe* and *Bradshaw*.[4] "But stare decisis does not compel us to follow a past decision when its rationale no longer withstands careful analysis. When the generalization underpinning a decision is unfounded, we should not continue in blind adherence to its faulty assumption." *Rose v. Anderson Hay & Grain Co.*, 184 Wn.2d 268, 282, 358 P.3d 1139 (2015). When a rule announced by past cases is clearly incorrect and harmful, we will overturn those erroneous decisions. *State v. Schierman*, 192 Wn.2d 577, 764, 438 P.3d 1063 (2018). (Yu, J., concurring in part and dissenting in part)

This court does not limit the meaning of "incorrect" to any specific kind of error. *State v. Barber*, 170 Wn.2d 854, 864, 248 P.3d 494 (2011). "An opinion can

---

[4] Blake argues we are not bound by stare decisis because *Cleppe* and *Bradshaw* "overlooked [the constitutional-doubt canon of statutory interpretation] and did not consider the due process argument presented here." Pet'r's Suppl. Br. at 14. Supporting amicus also notes the creation of the unwitting possession defense is a "judge-made rule" and "'[r]evisiting precedent is particularly appropriate where, as here, a departure would not upset expectations, the precedent consists of a judge-made rule . . . , and experience has pointed up the precedent's shortcomings.'" Br. of Amicus Curiae Inst. for Justice at 13 n.10 (alterations in original) (quoting *Pearson v. Callahan*, 555 U.S. 223, 233, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). While it is true that *Cleppe* never directly addressed the issues presented in this case, I find *Bradshaw*'s rejection of the petitioner's due process argument (albeit on grounds of inadequate briefing) suggests we should analyze whether both of those decisions were incorrect and harmful for purposes of overcoming the doctrine of stare decisis.

-11-

*State v. Blake (Shannon)* (Stephens, J., concurring in part, dissenting in part), 96873-0

be incorrect when it was announced, or it can become incorrect because the passage of time and the development of legal doctrines undermine its bases." *State v. Abdulle*, 174 Wn.2d 411, 415-16, 275 P.3d 1113 (2012). "A decision may be 'harmful' for a variety of reasons as well." *Barber*, 170 Wn.2d at 865. In *State v. W.R.,* 181 Wn.2d 757, 769, 336 P.3d 1134 (2014), we held a rule from two prior cases, which impermissibly shifted the burden of proof to the defendant, was harmful because it violated the defendant's constitutional due process right to have the State prove every element of the crime beyond a reasonable doubt and could lead to wrongful convictions.

The interpretation of our possession statute announced by *Cleppe* and extended by *Bradshaw* was incorrect from the start because those decisions ignored the legislature's clear direction to "supplement all penal statutes" with "provisions of the common law relating to the commission of crime and the punishment thereof," which includes the common law presumption of mens rea. RCW 9A.04.060. Instead, recognizing the inherent injustice of convicting a person of criminal possession for something they carried unknowingly, the court adopted the affirmative defense of unwitting possession. *Cleppe*, 96 Wn.2d at 380-81. But this work-around created the very constitutional harm Blake identifies: by requiring the defendant to prove a lack of mens rea—which, properly interpreted, is an essential

-12-

*State v. Blake (Shannon)* (Stephens, J., concurring in part, dissenting in part), 96873-0

element of criminal drug possession—the unwitting possession defense arguably violates due process. *See, e.g.*, *W.R.*, 181 Wn.2d at 769. We should avoid this harm by overturning the clearly incorrect interpretation adopted by *Cleppe* and *Bradshaw* and instead supplement our possession statute with the common law presumption of mens rea. As noted, this is the approach taken by other states with similar statutes, and it properly reads the drug possession statute in context as a model criminal law.

A. *Cleppe* Was Incorrect and *Bradshaw* Extended That Error

As a matter of statutory interpretation, *Cleppe*—and, by extension, *Bradshaw*—is clearly incorrect. "The purpose of statutory interpretation is 'to determine and give effect to the intent of the legislature.'" *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013) (quoting *State v. Sweany*, 174 Wn.2d 909, 914, 281 P.3d 305 (2012)). We determine legislative intent "from the plain language enacted by the legislature, [including] the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole." *Id*. Only if the statute is ambiguous do we turn to legislative history and other tools of statutory construction to derive legislative intent. *Id.* at 192-93. *Cleppe* erred by turning directly to legislative history rather than examining the context of the possession statute, its related provisions, and the statutory scheme as a whole to determine legislative intent. As indicated above, both the former and

-13-

present version of the drug possession statute are silent as to whether proof of the defendant's mental state is required. But the possession statute's silence on mens rea does not automatically make possession a strict liability crime or render the statute unconstitutional.

Years before *Cleppe*, the legislature enacted RCW 9A.04.060, which remains unchanged today: "The provisions of the common law relating to the commission of crime . . . *shall* supplement *all* penal statutes of this state." LAWS OF 1975, 1st Ex. Sess., ch. 260, § 9A.04.060 (emphasis added). The legislature thus directed the court in *Cleppe* and *Bradshaw* (and the court here today) to supplement the drug possession statute with common law principles—including the presumption of mens rea. *See id*.; *A.M.*, 194 Wn.2d at 47 (Gordon McCloud, J., concurring). By failing to apply RCW 9A.04.060, the court rendered that related statute meaningless. *See State v. Berlin*, 133 Wn.2d 541, 547-48, 947 P.2d 700 (1997) (holding a past decision was incorrect and harmful because it disregarded our basic rule of statutory construction to avoid rendering any relevant statutory provision meaningless).[5]

---

[5] By not reading mens rea into the possession statute, *Cleppe* and *Bradshaw* also incorrectly rendered meaningless RCW 69.50.603, which requires the UCSA "shall be so applied and construed as to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among those states which enact it." As noted above, Washington appears to be the only state in the United States that does not require the State to prove intent or mental state.

*State v. Blake (Shannon)* (Stephens, J., concurring in part, dissenting in part), 96873-0

Rather than properly supplement the statute with the relevant common law as directed by RCW 9A.04.060 and the United States Supreme Court, the *Cleppe* court immediately resorted to legislative history to try to resolve the statute's ambiguity. *See Cleppe*, 96 Wn.2d at 377-79. *Bradshaw* repeated *Cleppe*'s flawed statutory interpretation and reliance on legislative history and likewise rendered meaningless RCW 9A.04.060 and RCW 69.50.603. Neither *Cleppe* nor *Bradshaw* considered and rejected arguments based on the failure to apply RCW 9A.04.060 as directed. *Cf. Barber*, 170 Wn.2d at 864 (noting we have been reluctant to overrule past decisions based on arguments that were adequately considered and rejected in the original decisions themselves, but not so when the past decision conflicts with controlling rules of law that the court failed to previously consider and apply). I would hold these cases were incorrectly decided.

B. *Cleppe* and *Bradshaw* Are Also Harmful

"It is not enough that a decision is incorrect for us to overrule it; we must also find that it is harmful." *Id.* at 871. *Cleppe* and *Bradshaw* are clearly harmful. The Fourteenth Amendment's due process clause guarantees, "No state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. When the government seeks to convict someone, it must prove "beyond a reasonable doubt . . . every fact necessary to constitute the crime with

-15-

*State v. Blake (Shannon)* (Stephens, J., concurring in part, dissenting in part), 96873-0

which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *Patterson*, 432 U.S. at 210 ("[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged."). This foundational principle stems from one of the hallmarks of our criminal justice system: "[T]hat every person accused of a crime is constitutionally endowed with an overriding presumption of innocence, a presumption that extends to every element of the charged offense." *State v. Crediford*, 130 Wn.2d 747, 759, 927 P.2d 1129 (1996). "A corollary rule is that the State cannot require the defendant to disprove any fact that constitutes the crime charged." *W.R.*, 181 Wn.2d at 762. "[W]hen a defense necessarily negates an element of the crime, it violates due process to place the burden of proof on the defendant." *Id.* at 765.

The court in *Cleppe* recognized the inherent "harshness" of a law strictly criminalizing all drug possession and sought to mitigate the unjust consequences of such a law by adopting the affirmative defense of unwitting possession. 96 Wn.2d at 381. The affirmative defense currently provides, "A person is not guilty of possession of a controlled substance if the possession is unwitting. Possession of a controlled substance is unwitting if a person [did not know that the substance was in [their] possession] [or] [did not know the nature of the substance]." 11 WASHINGTON

-16-

*State v. Blake (Shannon)* (Stephens, J., concurring in part, dissenting in part), 96873-0

PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 52.01, at 1196 (4th ed. 2016) (most alterations in original). "The burden is on the defendant to prove by a preponderance of the evidence that the substance was possessed unwittingly. Preponderance of the evidence means that you must be persuaded, considering all of the evidence in the case, that it is more probably true than not true." *Id*.; *State v. Deer*, 175 Wn.2d 725, 735, 287 P.3d 539 (2012).

The unwitting possession defense recognizes that a person cannot be convicted under the possession statute if possession is unknowing or unintentional. Blake makes a compelling argument that burdening a defendant with proving unwitting possession violates due process because it negates the implied mens rea element we must read into the statute. *See W.R.*, 181 Wn.2d at 765. "This impermissible shift in burden is not merely academic but . . . rais[es] a very real possibility of wrongful convictions." *Id.* at 769. For these reasons, *Cleppe* and *Bradshaw* are harmful.

Those decisions are also harmful because they deviate from proper methods of statutory interpretation, render two statutes meaningless, and fail to adhere to long established common law principles. Affirming *Cleppe*'s and *Bradshaw*'s incorrect interpretations would harm the integrity of this court by approving of interpretative methods that are otherwise impermissible. While adhering to stare decisis is

-17-

generally desirable, we should not do so when it forces us to discard well-established rules of statutory interpretation and common law principles that safeguard the rights of the accused.

Finally, and perhaps most importantly, "[t]he fact of racial and ethnic disproportionality in our criminal justice system is indisputable." Research Working Grp. of Task Force on Race and the Criminal Justice Sys. *Preliminary Report on Race and Washington's Criminal Justice System*, 35 SEATTLE U.L. REV. 623, 627 (2012). "[S]cholars have shown that the poor, people of color, sexual minorities, and other marginalized populations have borne the brunt of criminal punishment and police intervention." Benjamin Levin, *Mens Rea Reform and Its Discontents,* 109 J. CRIM. L. & CRIMINOLOGY 491, 530 (2019). Given that criminal laws are enforced against marginalized communities at disproportionate rates, this court's past decisions divesting the possession statute of mens rea created a constitutional harm that has hit these vulnerable communities hardest. The majority similarly recognizes the harm of reading the drug possession statute to criminalize unknowing possession given the racial disparities in drug prosecutions and convictions. Majority at 13 n.10 (citing Gabriel J. Chin, *Race, the War on Drugs, and the Collateral Consequences of Criminal Conviction*, 6 J. GENDER, RACE & JUST. 253, 262-70 (2002)). These

*State v. Blake (Shannon)* (Stephens, J., concurring in part, dissenting in part), 96873-0

harsh realities give us all the more reason to overrule *Cleppe* and *Bradshaw* based on the harmful effects the holdings in those cases created.

We recently acknowledged this court's culpability in perpetuating the racial injustices in our legal system and pledged to recognize and correct such injustices. *See* Letter from Wash. State Supreme Court to Members of Judiciary & Legal Cmty. 1 (June 4, 2020) ("Too often in the legal profession, we feel bound by tradition and the way things have 'always' been.  We must remember that even the most venerable precedent must be struck down when it is incorrect and harmful."), https://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20News/Judiciary%20Legal%20Community%20SIGNED%20060420.pdf [https://perma.cc/QNT4-H5P7].  We should take ownership of and responsibility for our mistakes in *Cleppe* and *Bradshaw*, and overrule those decisions as incorrect and harmful.

### C. The Majority's Reliance on Legislative Acquiescence Sidesteps this Court's Commitment To Overturn Incorrect and Harmful Decisions

As the final authority on Washington law, we undisputedly have the ability to correct our own erroneous statutory interpretation in a previous case.  *See, e.g.*, *Keene v. Edie*, 131 Wn.2d 822, 834, 935 P.2d 588 (1997) (overruling *Brotton v. Langert*, 1 Wash. 73, 23 P. 688 (1890) (interpreting a statute to preclude community real estate from the execution of a judgment against a tortfeasor)).  Yet, the majority

*State v. Blake (Shannon)* (Stephens, J., concurring in part, dissenting in part), 96873-0

argues, "Given the interpretive principles of legislative acquiescence and stare decisis, only the legislature, not the court, can now change the statute's intent." Majority at 3. More specifically, the majority notes, whatever the current validity of *Cleppe* and *Bradshaw*, the legislature has acquiesced in their statutory interpretation by failing to add a mens rea element to the possession statute in the intervening years, thereby preventing us from revisiting those cases. Majority at 2.[6]

We should not lean so heavily on the rule of legislative acquiescence because "'[legislative] inaction lacks persuasive significance' in most circumstances." *Star Athletica, LLC v. Varsity Brands, Inc.*, ___ U.S. ___, 137 S. Ct. 1002, 1015, 197 L. Ed. 2d 354 (2017) (quoting *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650, 110 S. Ct. 2668, 110 L. Ed. 2d 579 (1990)). Importantly, "'evidence of legislative acquiescence is not conclusive, *but is merely one factor to consider*.'" *Fast v. Kennewick Pub. Hosp. Dist.*, 187 Wn.2d 27, 39, 384 P.3d 232 (2016) (emphasis added) (quoting *Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 392, 687 P.2d 195 (1984)). In the context of criminal statutes, it is unclear whether the rule of legislative acquiescence should even apply to our statutory interpretation. The rule originated in the context of administrative constructions of ambiguous statutes,

---

[6] In contrast to today's majority, the concurrence in *A.M.* stated, "[I]t is debatable whether a finding of legislative acquiescence is constitutionally permissible when the text of a criminal statute cannot support the court's long-standing interpretation using ordinary principles of statutory interpretation." 194 Wn.2d at 56 (Gordon McCloud J., concurring).

*State v. Blake (Shannon)* (Stephens, J., concurring in part, dissenting in part), 96873-0

where deference to the executive often pertains. *See, e.g.*, *Pringle v. State*, 77 Wn.2d 569, 573, 464 P.2d 425 (1970) (citing *State ex rel. Pirak v. Schoettler*, 45 Wn.2d 367, 371-72, 274 P.2d 852 (1954)); *see also State ex rel. Ball v. Rathbun*, 144 Wash. 56, 59, 256 P. 330 (1927) ("An executive construction is accepted generally by the courts as persuasive where the legislature has silently acquiesced in such construction by failing to amend the particular act."); *Smith v. N. Pac. Ry. Co.*, 7 Wn.2d 652, 665, 110 P.2d 851 (1941).

We are neither bound by legislative silence nor beholden to the legislature's inaction in response to our incorrect and harmful decisions. The scant support legislative silence or inaction may lend a prior interpretation cannot overcome the need to correct a long-standing injustice of our own making. We should not hold ourselves powerless to correct prior decisions reflecting an erroneous statutory interpretation, even when the legislature has not responded to those decisions. To adhere to the majority's view of legislative acquiescence would be to abdicate our judicial responsibility to correct course when precedent perpetuates harmful effects.

Unlike the majority, I would hold that *Cleppe*'s and *Bradshaw*'s statutory interpretations are both incorrect and harmful, and should be overturned. We should reject these decisions in favor of a proper interpretation that recognizes the implied

mens rea element, requiring the State to prove the absence of unwitting possession defense beyond a reasonable doubt.

III. Reading an Intent Element into the Drug Possession Statute Provides a Better Resolution Than Declaring the Statute Unconstitutional

Recognizing that our drug possession statute includes an intent element corrects our past mistakes and resolves this case on narrow grounds. This approach avoids the majority's sweeping holding to declare the statute unconstitutional in its entirety as beyond the legislature's police powers. It is particularly noteworthy that the majority reaches its holding based on a test that was never addressed in the briefing of either party. While Blake raised a constitutional due process challenge as an alternative to her statutory interpretation argument, her arguments do not align with the majority's position. The majority's novel analysis of substantive due process has the potential to overturn a number of criminal statutes to the extent this court finds they criminalize innocent or passive nonconduct. I would reject this analysis because it reaches far beyond the issues and arguments before us, and it misinterprets the precedent the majority relies on.

A. The Majority Oversteps by Creating a Test That No One Asked for and Is Not Sufficiently Grounded in Our Case Law

Under the principle of "party presentation" the United States Supreme Court has noted, "'[Courts] do not, or should not, sally forth each day looking for wrongs

*State v. Blake (Shannon)* (Stephens, J., concurring in part, dissenting in part), 96873-0

to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties.'" *Greenlaw v. United States*, 554 U.S. 237, 244, 128 S. Ct. 2559, 171 L. Ed. 2d 399 (2008) (alteration in original) (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in denial of reh'g en banc)). The Court reaffirmed this point in *United States v. Sineneng-Smith*, ___ U.S. ___, 140 S. Ct. 1575, 1578, 206 L. Ed. 2d 866 (2020), holding the Ninth Circuit Court of Appeals overstepped its bounds by inviting amici to brief a First Amendment overbreadth issue and subsequently accepting amici's arguments to declare a particular immigration provision facially unconstitutional— rather than confronting the petitioner's request to find the provisions at issue did not cover her conduct or, if they did, "they violated the Petition and Free Speech Clauses of the First Amendment as applied." The Court noted that while there are circumstances where "a modest initiating role for a court is appropriate," "[n]o extraordinary circumstances justified the panel's takeover of the appeal." *Id.* at 1579, 1581.

The majority's approach in the current case presents substantially similar concerns as in *Sineneng-Smith*. Rather than meaningfully engage with the arguments Blake raises, the majority summarily concludes the "time has long since passed [to interpret RCW 69.50.4013 as including an intent element]" and rejects

*State v. Blake (Shannon)* (Stephens, J., concurring in part, dissenting in part), 96873-0

Blake's alternative due process challenge that the affirmative defense of unwitting possession "unconstitutionally shifts the burden of proof onto her from the State." Majority at 2, 20. The majority then steers this case into deep, uncharted waters to decide "whether unintentional, unknowing possession of a controlled substance is the sort of innocent, passive nonconduct that falls beyond the State's police power to criminalize." *Id.* at 14. I do not believe that question is actually before us.

Moreover, the substantive due process test announced by the majority is constructed from a collection of passing phrases from three separate cases. Specifically, the majority strings together a series of citations to announce a new rule that the "legislature's exercise of its otherwise plenary police power to criminalize entirely passive and innocent nonconduct with no mens rea . . . violates . . . due process." *Id.* at 10-14 (citing *Lambert v. California*, 355 U.S. 225, 78 S. Ct. 240, 2 L. Ed. 2d 228 (1957); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972); *City of Seattle v. Pullman*, 82 Wn.2d 794, 514 P.2d 1059 (1973)). I cannot speak to what the parties may have to say about this rule, but I believe this passive nonconduct versus active criminal conduct test is not supported by the cited precedent and is ill suited to the present case.

In *Lambert*, the United States Supreme Court held a felon registration ordinance unconstitutional where it was "unaccompanied by any activity" other than

-24-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

"mere presence in the city." 355 U.S. at 229. And in *Papachristou*, the Court determined a vagrancy ordinance was void for vagueness given that it "'fails to give a person of ordinary intelligence fair notice'" and "makes criminal activities which by modern standards are normally innocent." 405 U.S. at 162-63 (quoting *United States v. Harriss*, 347 U.S. 612, 617, 74 S. Ct. 808, 98 L. Ed 989 (1954)). In *Pullman*, we held a Seattle ordinance prohibiting individuals from accompanying a child during curfew hours was unconstitutionally vague and violated due process. 82 Wn.2d at 795. In reaching this holding, we noted that the certain words in the ordinance, including "'to loiter, idle, wander or play'" failed to "provide ascertainable standards for locating the line between innocent and unlawful behavior." *Id.* at 799. One major distinction between these cases and the present case is that criminalizing the possession of controlled substances differs greatly from the criminalization of night walking or failure to register.

To be sure, knowing possession of a controlled substance necessarily involves an active decision to obtain that particular drug. And the majority concedes that the active trafficking of drugs "is not innocent conduct." Majority at 14. Instead, the majority appears to argue that "*unknowing* possession is just as innocent and passive as staying out late with a juvenile or remaining in a city without registering." *Id.* (emphasis added). But if that is true, then the proper solution is to remedy the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

statute's unconstitutional implications by reading in an intent requirement, as courts regularly do. Adopting the majority's approach means striking the possession statute in its entirety, and it opens the door to a slew of due process challenges asserting passive versus active conduct in criminal statutes.

In addition to the future challenges the majority's novel test will undoubtedly invite, the test also has the potential to undermine our existing constitutional analysis. The majority insists its "active" versus "passive" test leaves undisturbed other constitutionally permissible strict liability crimes such as the rape of a child because, there, "the State must certainly show the *activity* of sexual intercourse, not just innocent *passivity*." *Id.* at 29 (emphasis added). But the majority acknowledges one case where we held a defendant had the burden of proving her acts were involuntary in a child rape case. *Id.* at 29 n.15 (citing *Deer*, 175 Wn.2d at 731-38). The majority attempts to distinguish *Deer* because that case concerned the "actus reus" element of the rape charge, whereas the present case concerns "strict liability felony punishment for nonconduct that is both innocent *and* passive." *Id.* But the majority fails to explain how its test would account for our holding in *Deer*.

Under the test the majority proposes, the defendant in *Deer* would be able to argue that criminalization of child rape without a mens rea element unconstitutionally punishes innocent and passive behavior where a defendant was

-26-

asleep and, therefore, failed to partake in the *activity* of the alleged rape. In *Deer*, we noted that just because a defendant was asleep during sexual intercourse with a child "does not negate the fact that sexual intercourse occurred." 175 Wn.2d at 734. Similarly, if drug possession is regarded as a strict liability crime, just because an individual is unaware they possess an uncontrolled substance does not change the fact that possession of that uncontrolled substance occurred. The consequence of the majority's test is that statutes that lack a mens rea element now have the potential to be overturned not because a mens rea element is required but as a result of a test that hinges on whether the *act or conduct* at issue is deemed passive or innocent. Such a test conflates the distinct elements of mens rea and actus reus and will undoubtedly lead to confusion and divergent application among the courts.

B. The Better Course Is To Properly Construe the Drug Possession Statute and Follow the Doctrine of Constitutional Avoidance

The majority recognizes that "'[w]e construe statutes to avoid constitutional doubt.'" Majority at 21 (alteration in original) (quoting *Utter ex rel. State v. Bldg. Indus. Ass'n of Wash.*, 182 Wn.2d 398, 434, 341 P.3d 953 (2015)). Interpreting the possession statute to require a mens rea element "avoids a confrontation with the constitution." *A.M.*, 194 Wn.2d at 49 (Gordon McCloud, J., concurring). Yet the majority argues constitutional avoidance is impossible based on the "overwhelming evidence that the legislature intends the simple possession statute to penalize

-27-

*State v. Blake (Shannon)* (Stephens, J., concurring in part, dissenting in part), 96873-0

innocent nonconduct." Majority at 21. As explained, such "overwhelming evidence" does not exist, and legislative inaction following *Cleppe* and *Bradshaw* "'is merely one factor to consider.'" *Fast*, 187 Wn.2d at 39. (quoting *Safeco Ins. Cos.,* 102 Wn.2d at 392)

When the drug possession statute is considered in context—including the context of RCW 9A.04.060, which favors presuming a general mens rea requirement in criminal statutes—there is little to suggest the legislature intended to impose strict liability. Admittedly, the legislative intent is not clear, but I would adhere to the constitutional-doubt canon, which instructs that ambiguous statutes are interpreted to avoid constitutional doubts when statutory language reasonably permits. *Gomez v. United* States, 490 U.S. 858, 864, 109 S. Ct. 2237, 104 L. Ed. 2d 923 (1989); *Utter*, 182 Wn.2d at 434. The majority's only reason for avoiding this outcome is unwarranted deference to prior case law that erroneously interpreted the statute as a strict liability crime. But as explained, this case law is incorrect and harmful, and should not be further extended given the constitutional implications at stake. In adherence to the doctrine of constitutional avoidance, we should overturn *Cleppe* and *Bradshaw* and properly construe our model drug possession statute as containing an implied mens rea element, consistent with similar statutes in other states.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Blake (Shannon)* (Stephens, J., concurring in part, dissenting in part), 96873-0

CONCLUSION

*Cleppe* and *Bradshaw* are incorrect and harmful decisions that this court—not the legislature—should remedy by reading an intent requirement into the possession statute. Such an outcome is supported by the presumption of mens rea in criminal statutes and the requirement for uniform interpretation of the Uniform Controlled Substances Act among the states. Because I read the drug possession statute to require proof of intent, I concur in result with the majority's decision to overturn Blake's conviction. I respectfully dissent from the majority's unnecessary decision to declare the statute unconstitutional as exceeding the legislature's police power.

Stephens, J.

*State v. Blake*

No. 96873-0

JOHNSON, J. (dissenting)—Over 60 years ago, this court decided that the crime of possession of a controlled substance does not require knowledge or intent. "Whether intent or guilty knowledge is to be made an essential element . . . is basically a matter to be determined by the legislature." *State v. Henker*, 50 Wn.2d 809, 812, 314 P.2d 645 (1957).

We reiterated this principle in *State v. Cleppe*, 96 Wn.2d 373, 378, 635 P.2d 435 (1981), unanimously rejecting a challenge to the validity of the legislature's power to enact RCW 69.50.401(c), which continued to make possession of a controlled substance a crime without a mens rea requirement. In the course of our decision, we reversed holdings from Court of Appeals cases to the contrary. *See Cleppe*, 96 Wn.2d at 377 (citing *State v. Weaver*, 24 Wn. App. 83, 600 P.2d 598 (1979); *State v. Smith*, 17 Wn. App. 231, 562 P.2d 659 (1977); *State v. Hennings*, 3 Wn. App. 483, 475 P.2d 926 (1970)). And, again, more recently in *State v. Bradshaw*, 152 Wn.2d 528, 98 P.3d 1190 (2004), we rejected an argument to

*State v. Blake*
(Johnson, J., dissenting)

overrule *Cleppe* (and implicitly those many cases consistent with *Cleppe*'s holding).

Finally, removing any doubt in this long-standing principle, in *State v. Yishmael*, 195 Wn.2d 155, 456 P.3d 1172 (2020), we held that the crime of the unauthorized practice of law, RCW 2.48.180(3), does not require proof of knowledge or intent. We stated, "[U]nder our constitutional system, our legislature has the plenary power to criminalize conduct regardless of whether the actor intended wrongdoing." *Yishmael*, 195 Wn.2d at 163 (citing *State v. Bash*, 130 Wn.2d 594, 604, 925 P.2d 978 (1996)). We call these crimes strict liability crimes. *See, e.g.*, *Yishmael*, 195 Wn.2d at 163-64; *Bradshaw*, 152 Wn.2d at 536-37.

The legislative power to enact strict liability crimes remains consistent and undiminished, and the Court of Appeals decision upholding RCW 69.50.4013(c) should therefore be affirmed.[1] Our continued recognition of this legislative power applies with special force in this case given the length of time that the crime of possession of a controlled substance has been upheld as a strict liability crime. The

---

[1] This legislative power repeatedly affirmed by our cases is consistent with United States Supreme Court cases, which have recognized the ability of the legislature to enact strict liability crimes for over a century. *See Shevlin-Carpenter Co. v. Minnesota*, 218 U.S. 57, 68-70, 30 S. Ct. 663, 54 L. Ed. 930 (1910); *see also United States v. Balint*, 258 U.S. 250, 254, 42 S. Ct. 301, 66 L. Ed. 604 (1922) (upholding strict liability for selling a controlled substance).

2

*State v. Blake*
(Johnson, J., dissenting)

constitutional analysis in the majority's decision is not convincing enough to

outweigh those considerations.

_____
Johnson, J.

_____
Madsen, J.

_____
Owens, J.
