# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55608-1-II |
| Respondent, | Consolidated with<br>No. 55889-1-II<br>No. 56168-9-II |
| v. | No. 56188-3-II<br>No. 56308-8-II |
| MICHAEL EVAN ROSS-MORALES, | |
| Appellant. | UNPUBLISHED OPINION |
| In the Matter of the Personal Restraint Petition of | |
| MICHAEL EVAN ROSS-MORALES, | |
| Petitioner. | |

MAXA, J. – Michael Ross-Morales appeals his convictions of vehicular homicide and hit and run (death) and his sentence. His appeal has been consolidated with several personal restraint petitions (PRPs), in which he alleges that the trial court calculated his offender score incorrectly at sentencing. Ross-Morales also filed a statement of additional grounds (SAG).

These convictions arose from an incident in which Ross-Morales hit a pedestrian with a car he was driving and then left the scene. The car involved in the accident later was found abandoned. After the Washington State Patrol performed an extensive examination of the car, law enforcement returned the car to its owner and the car later could not be located. Ross-Morales argues that law enforcement's failure to retain the car as exculpatory evidence violated his due process rights.

We hold that (1) the trial court did not err in denying Ross-Morales's motion to dismiss based on law enforcement's failure to preserve the car involved in the hit and run; (2) we reject Ross-Morales's challenge to his convictions in his SAG; (3) as the State concedes, Ross-Morales is entitled to be resentenced because his offender score included four convictions for unlawful possession of a controlled substance that now are void under *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021); and (4) we deny Ross-Morales's PRPs. Accordingly, we affirm Ross-Morales's convictions and deny his PRPs, but we remand to the trial court to adjust Ross-Morales's offender scores and for resentencing.

FACTS

*Background*

On September 30, 2018 at approximately 8:20 PM, Michael Simmelink began to cross a street in downtown Washougal outside of a crosswalk. He walked directly into the path of an oncoming car, which struck him. Simmelink later died from his injuries. The car that hit Simmelink left the scene. The car subsequently was found abandoned several blocks away.

Dean Miesbauer, who lived near Ross-Morales, owned the car involved in the hit and run. On the afternoon of the accident, Miesbauer allowed Ross-Morales to borrow that car so Ross-Morales could serve a process on a person named John Corcoran in Washougal. Ross-Morales arrived at Corcoran's house between 7:30 PM and 8:15 PM. Renee Corcoran told Ross-Morales that no one by that name lived there and said that he should leave. A short time later, Ross-Morales called a person named Dennis Simonson and asked Simonson to pick him up. Miesbauer came along so he could retrieve his car.

Sometime after 9:20 PM, Simonson and Miesbauer picked up Ross-Morales approximately 300 feet away from where Miesbauer's car had been abandoned. Ross-Morales looked disheveled and had cuts on his face. Ross-Morales told them that he had fallen into a

2

ditch with some blackberry bushes. He then informed Miesbauer that his car had been stolen. When Miesbauer asked if Ross-Morales called the police to report it, Ross-Morales said he had not and that Miesbauer should do it because it was his car.

When Ross-Morales later discovered that Simonson was going to talk with the police, he asked Simonson to tell them that he picked up Ross-Morales at 7:30 PM instead of the actual time. Simonson refused.

*Inspection and Release of the Car*

The Washougal police impounded Miesbauer's car. Pursuant to a warrant, the Washington State Patrol Crime Scene Response Team conducted an extensive investigation that involved an examination of the interior and exterior of the car for fingerprints, DNA, and other evidence. Investigators also took a large number of photographs.

The car then was released to Miesbauer pursuant to Washougal Police Department policy. But Miesbauer later went to prison on unrelated charges, and thereafter the car could not be located.

Law enforcement obtained the results of the search warrant examination several months later. The results showed that Ross-Morales's fingerprints were on the rearview mirror, Simmelink's blood was on the windshield, Ross-Morales's and Miesbauer's DNA was on the gear shift, and Ross-Morales's blood was on the driver's seat belt. After receiving these results, law enforcement arrested Ross-Morales, and he was charged with vehicular homicide, hit and run, and second degree driving with a suspended or revoked license.

*Motion to Suppress*

Before trial, Ross-Morales filed a motion to suppress evidence found in the car because the car was improperly returned to Miesbauer before Ross-Morales could inspect it. Ross-

3

Morales argued that the car was exculpatory evidence because the position of the seat, rearview mirror, and blood on the exterior and interior of the car would have demonstrated he was not the driver. The trial court denied the motion to suppress. The court concluded that this information was not apparently exculpatory.

*Trial and Sentencing*

The case proceeded to a jury trial. Several witnesses, including Ross-Morales, provided testimony at trial regarding the facts recited above. Ross-Morales also testified that he was working on Miesbauer's car the night before the accident and cut his hand. He used the seat belt to help him off the ground, and that is how the blood got on it. Ross-Morales was convicted of vehicular homicide and hit and run (death).

At sentencing, the State presented Ross-Morales's extensive criminal record, including his four prior convictions for unlawful possession of a controlled substance. Ross-Morales's criminal history also included two convictions in 2015 for felony malicious mischief: (1) deadly weapon and (2) hit and run attended vehicle. Ross-Morales's offender score was 12 for the vehicular homicide conviction and 13 for the hit and run conviction. Because of Ross-Morales's high offender score, the trial court imposed an exceptional sentence based on the "free crimes" aggravator under RCW 9.94A.535(2)(c).

Ross-Morales appeals his convictions and his sentence.

ANALYSIS

A.    FAILURE TO PRESERVE EXCULPATORY EVIDENCE

Ross-Morales argues that the trial court erred in denying his motion to dismiss based on his claim that the State failed to preserve exculpatory evidence – the car used in the hit and run – in violation of his due process rights. We disagree.

4

1.    Legal Principles

Whether the State's failure to preserve evidence of an offense constitutes a due process violation that requires dismissal of criminal charges depends on how the evidence is characterized. *See State v. Armstrong*, 188 Wn.2d 333, 345, 394 P.3d 373 (2017). The criminal charges must be dismissed if the State has not preserved "material exculpatory evidence." *State v. Wittenbarger*, 124 Wn.2d 467, 475, 880 P.2d 517 (1994). To constitute "material exculpatory evidence," the evidence at issue must " 'possess an exculpatory value that was apparent before it was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.' " *Armstrong*, 188 Wn.2d at 345 (quoting *Wittenbarger*, 124 Wn.2d at 475). This is a "very narrow category." *State v. Groth*, 163 Wn. App. 548, 557, 261 P.3d 183 (2011).

On the other hand, the failure to preserve "potentially useful evidence" does not violate due process unless the defendant can show bad faith by the State. *Armstrong*, 188 Wn.2d at 345. Evidence is merely potentially useful if " 'no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.' " *Groth*, 163 Wn. App. at 557 (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988)).

Whether the State has acted in bad faith depends on the State's knowledge of the evidence's exculpatory value at the time it was lost or destroyed. *Armstrong*, 188 Wn.2d at 345. The defendant must come forward with specific factual allegations that show an improper motive. *Id.* However, "[a]cting in compliance with its established policy regarding the evidence at issue is determinative of the State's good faith." *Id.*

5

2.    Analysis

Ross-Morales argues that the car involved in the accident constituted "material exculpatory evidence." He claims that an examination of the car would have shown blood underneath the car where he allegedly cut his hand the day before the accident and could have shown that the seat and the mirrors were not in the proper position for someone of his height.

However, while finding blood under the car and the position of the driver's seat and rearview mirror may have been helpful evidence, it did not have exculpatory value that was apparent before the car was released. The evidence that Ross-Morales hoped to recover from inspecting the vehicle would not have ruled out the fact that he was the driver. It was speculative at best and not apparently exculpatory. In addition, there were other reasonable means of obtaining this information because photos of the car were available. Ross-Morales could have had an expert testify to the position of the seat and mirror based on those photos. Therefore, we conclude that the car involved in the accident was not "material exculpatory evidence."

Instead, the car involved in the accident was merely "potentially useful evidence." The issue then becomes whether Ross-Morales can show that the Washougal Police Department released the car in bad faith. *Armstrong*, 188 Wn.2d at 345.

Ross-Morales does not present any specific factual allegations that show an improper motive. He only claims without supporting evidence that the police knew of the exculpatory value of the car at the time it was released. In addition, the car was released in accordance with Washougal Police Department policy, which is determinative of good faith. *Id.* Therefore, we conclude that the release of the car involved in the accident was not a due process violation.

We hold that the trial court did not err in denying the motion to suppress evidence from the car involved in the accident.

6

B.      SAG CLAIMS

Ross-Morales makes four assertions in his SAG.  We reject these assertions.

1.      Failure to Preserve Exculpatory Evidence

Ross-Morales asserts that the trial court erred in denying his motion to dismiss because the State failed to preserve exculpatory evidence.  We have addressed this issue above and do not address it again.

2.      Sufficiency of the Evidence

Ross-Morales asserts that there was insufficient evidence showing that he was the driver of the car that hit Simmelink.  We disagree.

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt.  *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017).  In a sufficiency of the evidence claim, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from that evidence.  *Id*. at 265-66.  Credibility determinations are made by the trier of fact and are not subject to review.  *Id.* at 266.

Here, Miesbauer testified that Ross-Morales borrowed his car before the accident.  Ross-Morales was in Washougal in the car attempting to serve process shortly before the accident.  His fingerprints were found on the rearview mirror, his DNA was found on the gear shift, and his blood was found on the driver's seat belt.  When Simonson picked up Ross-Morales after the accident, he was 300 feet from where the car was abandoned and had cuts on his face, head and arm.  Viewed in the light most favorable to the State, this evidence is sufficient for a jury to find beyond a reasonable doubt that Ross-Morales was driving the car when it hit Simmelink.

7

3. Application of Hit and Run Statute

Ross-Morales asserts that he cannot be guilty under RCW 46.52.020(4)(a), hit and run (death), because he asserts that Simmelink committed suicide by walking in the path of a vehicle and the statute only covers "accidents." We disagree.

RCW 46.52.020(1) provides, "A driver of any vehicle involved in an accident resulting in the injury to or death of any person or involving striking the body of a deceased person shall immediately stop such vehicle at the scene of such accident." The failure to stop "in the case of an accident resulting in death is guilty of a class B felony." RCW 46.52.020(4)(a).

Ross-Morales claims that Simmelink's intentional act of stepping in front of the car was not an "accident." However, an " 'accident' within the meaning of RCW 46.52.020(1) includes incidents arising from intentional conduct on the part of the defendant or the victim." *State v. Silva,* 106 Wn. App. 586, 595, 24 P.3d 477 (2001). Therefore, we reject Ross-Morales's claim.

4. Ineffective Assistance of Counsel

Ross-Morales asserts that he received ineffective assistance of counsel because his defense counsel did not show the jury the video of the accident that was slowed down, zoomed in, and lightened like counsel showed him. However, the record does not contain this interaction between Ross-Morales and defense counsel regarding the video. Accordingly, we cannot address this assertion because it is based on matters outside the record. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008); RAP 10.10(c).

C. ADJUSTED OFFENDER SCORE UNDER *BLAKE*

Ross-Morales argues, and the State concedes, that he is entitled to be resentenced because his offender score included four convictions for unlawful possession of a controlled substance that now are void under *Blake*. We agree.

8

In *Blake*, the Supreme Court held that Washington's strict liability drug possession statute, RCW 69.50.4013(1), was unconstitutional. 197 Wn.2d at 195. A conviction based on an unconstitutional statute cannot be included in a defendant's offender score. *State v. LaBounty*, 17 Wn. App. 2d 576, 581-82, 487 P.3d 221 (2021). Therefore, Ross-Morales's offender score must be adjusted to remove his four prior convictions for unlawful possession of a controlled substance.

In addition, the trial court imposed an exceptional sentence based on the "free crimes" aggravator because Ross-Morales's offender scores were 12 and 13. Because Ross-Morales's offender scores now will be 8 and 9, there no longer is a basis for the exceptional sentence.

Therefore, we remand for the trial court to adjust Ross-Morales's offender scores and to resentence him.[1]

D.    PRP CLAIMS

Ross-Morales filed four PRPs that were consolidated into this appeal. All four PRPs claimed that Ross-Morales's offender score was calculated improperly with respect to a 2015 guilty plea. We disagree.

In the first three PRPs, Ross-Morales argues that in 2015 he took a plea deal to have his hit and run charge reduced to malicious mischief/deadly weapon, but two points were incorrectly added to his offender score regarding this guilty plea instead of one. In his fourth PRP, Ross-Morales concedes that he pleaded guilty to both hit and run and malicious mischief, but still asserts his offender score was incorrect.

---

[1] Ross-Morales also argues that the community custody supervision fees that the trial court imposed should be stricken. At resentencing, the trial court can consider whether to impose these fees.

In 2015, Ross-Morales originally was charged with felony hit and run. When he pleaded guilty, the charges were reduced to criminal mischief and hit and run (attended). The plea agreement states that Ross-Morales would plead guilty to those two offenses. No charges were dismissed. Therefore, two points were correctly added to his offender score based on the 2015 guilty plea.

Accordingly, we deny Ross-Morales's PRP.

CONCLUSION

We affirm Ross-Morales's convictions and deny his PRPs, but we remand to the trial court to adjust Ross-Morales's offender score and for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

WORSWICK, P.J.

PRICE, J.