# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  56600-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| RICHARD L. PURVES, | |
| Appellant. | |

CRUSER, A.C.J. — In November 2020, Purves was driving with a suspended license when he was stopped for speeding, and officers found drug paraphernalia and heroin on his passenger's person. The officers looked into the window of the car and saw what they suspected to be drugs and drug paraphernalia. The officers sought and obtained a search warrant for the vehicle, and were granted that warrant, based on a finding of probable cause that Purves was in violation of statutes outlawing simple possession of a controlled substance and use of drug paraphernalia. When they executed the warrant, officers found drugs, paraphernalia, cash, and a logbook in Purves' car.

Purves was charged with two counts of possession with intent to manufacture or distribute heroin and fentanyl. He moved to suppress the fruits of the warrant, arguing that under *State v. Blake*[1], decided in February 2021, there was no legal basis to search his car for evidence of simple

---

[1] *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021) (holding that Washington's statute criminalizing simple drug possession was unconstitutional and void because it lacked a *mens rea* element).

drug possession, and that the paraphernalia portion of the warrant was not severable from the drug possession portion. Purves makes the same argument in this appeal.

We affirm the trial court's denial of the suppression motion. The warrant here was based on two criminal statutes, one of which remains valid—RCW 69.50.412(1), criminalizing use of drug paraphernalia. Officers had sufficient probable cause to believe that Purves had violated the drug paraphernalia statute, so it is immaterial that RCW 69.50.4013, criminalizing simple drug possession, was later invalidated under *Blake*.

Purves also argues, and the State concedes, that his sentence of 120 months confinement for each count plus 12 months community custody was in excess of the ten-year statutory maximum for his crimes. We remand with instructions to remove the 12-month community custody period from his sentence, leaving him with a sentence of 120 months confinement for each count.

## FACTS

### I. UNDERLYING INCIDENT

Purves was pulled over after Jefferson County Deputy Justin Coronado paced him as driving 75 MPH in a 60 MPH zone. Purves gave Coronado his passport and explained that his driver's license was suspended. Purves was then transferred to the back of the patrol car and another officer began speaking with his passenger, Nicole Prince. That officer found drug paraphernalia and heroin on Prince and arrested her for possession of a controlled substance and use of drug paraphernalia.

Looking into the car from the outside, officers saw "a clear plastic baggy under the emergency brake in the center console" containing "a brown powdery substance." Clerk's Papers

2

(CP) at 44. They also observed "balled up tinfoil on the passenger side floorboards [of the car] by Prince's feet" and "a hollowed out pen sitting next to the driver seat in between the door and the seat." *Id*. Finally, they saw "a small black case" similar to what they knew as drug kits. *Id*. The officers then seized the vehicle pending a search warrant for the interior.

## II. SEARCH WARRANT

Deputy Coronado applied for a search warrant for the vehicle. Coronado's affidavit described why he believed evidence of the crimes codified at RCW 69.50.4013 (drug possession) and at RCW 69.50.412(1) (use of drug paraphernalia) was located in the car Purves was driving when he was pulled over. He explained that he saw the car driving erratically at a high speed, then stopped the vehicle and determined that Purves, the driver, had his license suspended. Another officer found heroin and a "tooter"[2] on a passenger's person and observed tinfoil on the floor beneath the passenger's feet. CP at 20, 26. Coronado could see another tooter and a clear plastic bag containing brown powder inside the car. The officers impounded the vehicle to await a warrant.

On November 14, 2020, a district court judge issued a warrant to search the car, finding probable cause that it contained evidence of the crimes codified at RCW 69.50.4013 and at RCW 69.50.412(1). The warrant authorized seizure of:

➢ Items showing dominion or control of the vehicle.
➢ Items showing dominion or control of items seized therein [sic] the vehicle.
➢ Photographs of the interior of the vehicle and items seized therein.
➢ All drug paraphernalia including but not limited to pipes, lighters, syringes, foil, baggies, straws, and spoons.
➢ All controlled substances including but not limited to methamphetamine, prescription pills, and heroin.

---

[2] According to Coronado, this is a term for a melted pen used to smoke drugs.

CP at 23.

> Officer Coronado executed the warrant and found:
>
> a cellular device in the front area of the vehicle, a white crystalline substance he believed to be methamphetamine, weighing approximately 52 grams and was [sic] packaged separately into four separate baggies. A brown powdery substance believed to be heroin weighing approximately 40 grams that was packaged into three separate baggies, 219 blue M-Box pills packaged into two separate baggies, a digital scale and numerous small zip lock baggies. Further, a bundle of cash wrapped in a rubber band next to drug paraphernalia was located. The US currency totaled $4680. Additionally Purves was in possession of a small book. Inside the book contained several names with dollar amounts next to them.

CP at 53; *see also* CP at 63-80 (photos). The substances that were seized were later identified as heroin, fentanyl, and methamphetamine.

Shortly thereafter, Purves was charged under RCW 69.50.401(1) with two counts of possession with intent to manufacture or deliver a controlled substance (heroin and fentanyl).

### III. MOTION TO SUPPRESS

Purves moved to suppress the fruits of the search, and the court heard arguments on the motion on August 20, 2021. Purves argued that after the *Blake* decision, a suspected violation of Washington's drug possession statute was not a legally valid basis for the search warrant. Accordingly, Purves asked the court to dismiss the charges against him.

The State argued in response that even if *Blake* made drug possession an invalid basis for the warrant, the police had independent probable cause for use of drug paraphernalia. It went on to argue that *Blake* did not change the validity of the warrant because at the time the warrant was issued, simple drug possession was a crime.

The court concluded that the warrant was lawfully issued based on probable cause for both crimes and denied Purves' motion to suppress. It entered the following conclusions of law that are challenged on this appeal:

1.  On November 14, 2020, the date the warrant was issued, possession of a controlled substance and use of certain drug paraphernalia were unlawful.

. . . .

14. A warrant issued by a magistrate based on a statute that was later invalidated is valid at its inception.

. . . .

17. Like probable cause to arrest, probable cause to issue a warrant is based upon both the facts known at the time and the law in effect at the time the warrant was issued unless the law was grossly and flagrantly unconstitutional.

. . . .

25. The warrant to search the vehicle for controlled substances was validly issued because RCW 69.50.4013 was valid at the time the warrant was issued and there was probable cause to believe the vehicle contained controlled substances based on Deputies seeing what they believed to be "gun powder heroin" sitting under the emergency brake.

26. The warrant was validly issued to search for drug paraphernalia based on the passenger possessing a "tooter" with burned residue in it, the lighter in her hand, the controlled substances in the vehicle, and the other paraphernalia in the vehicle that the deputies observed from outside the vehicle.

27. Assuming that RCW 69.50.4013(1) was invalid at the time the warrant was issued, it was still lawful to issue the search warrant for the controlled substances as the existence of the controlled substances within the vehicle was evidence that could be used to show the Defendant was using the drug paraphernalia.

. . . .

29. Severance does not apply to the facts of this case as the warrant was not overly broad and it described the area to be searched with sufficient particularity.

30. This case does not involve a "good faith exception" because there is no question the magistrate had probable cause at the time the warrant was issued. The

only issue is that the Supreme Court subsequently struck down one of the statutes listed in the warrant.

31. There is a substantive difference between vacating convictions which impact voting, traveling abroad, the right to bear arms, jury service, employment in certain fields, public social benefits and housing, and parental benefits, and upholding a warrant that leads to a temporary, and in this case minor, invasion of a person's privacy rights.

CP at 89, 91-94.

## IV. CONVICTION AND SENTENCING

Purves waived his right to a jury trial and agreed to be tried on stipulated evidence consistent with the police reports from the incident. The court found him guilty of two counts of possession with intent to manufacture or deliver a controlled substance (heroin and fentanyl). Following the State's recommendation, the court sentenced Purves to 120 months confinement for each count (to run concurrently) and 12 months of community custody.

## ANALYSIS

### I. STATUTORY BACKGROUND

A. Simple Drug Possession

Former RCW 69.50.4013 (2017) made it a felony "to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his or her professional practice, or except as otherwise authorized by this chapter." This was true regardless of whether the defendant "even knew they possessed the substance." *Blake*, 197 Wn.2d at 523.

In *State v. Blake*, decided in February 2021, the supreme court concluded that statute was unconstitutional. *Blake*, 197 Wn.2d at 524. It reasoned that the statute's strict liability scheme violated the due process clause by "taking innocent and passive conduct with no criminal intent at

6

all and punishing it as a serious crime." *Blake*, 197 Wn.2d at 524. After the *Blake* decision, the legislature amended RCW 69.50.4013(1) to outlaw drug possession only when it is done "knowingly." LAWS OF 2021, ch. 311, § 9.

B. Use of Drug Paraphernalia

Former RCW 69.50.412(1) (2019) made it a misdemeanor "to use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance other than marijuana." RCW 69.50.102(a)[3] defines drug paraphernalia as

> all equipment, products, and materials of any kind which are used, intended for use, or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance.

RCW 69.50.102(b) goes on to list fourteen non-exhaustive factors that inform the court's determination of whether a particular object is drug paraphernalia, including "[t]he proximity of the object to controlled substances" and "[t]he existence of any residue of controlled substances on the object."

---

[3] Although this statute was revised in 2022, the portions quoted here remain identical to Former RCW 69.50.102 (2012).

C. Drug Possession With Intent to Manufacture or Deliver

RCW 69.50.401(1) makes it a crime to "manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance."[4] Pursuant to RCW 69.50.401(2)(a), a violation of this statute where the drug is a Schedule I or II narcotic is a class B felony with a maximum sentence of ten years confinement.

## II. SEARCH WARRANT

Purves argues that the trial court erred when it denied his motion to suppress the fruits of the search warrant. He contends that the *Blake* decision, which invalidated the drug possession statute the warrant was partially based on, rendered the warrant invalid. The State responds that, at the time the warrant was issued, officers had authority to reasonably rely on the drug possession statute that was later invalidated in *Blake*.

However, these arguments are inapposite because the warrant here was adequately supported by probable cause that Purves violated the use of drug paraphernalia statute. We affirm on that ground and decline to reach the *Blake* issue.

A. Legal Principles

Article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in [their] private affairs, or [their] home invaded, without authority of law." This is a stronger protection than the Fourth Amendment of the United States Constitution, which guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects,

---

[4] The 2019 version and the 2022 version of the relevant portions of this statute are identical. *See* Former RCW 69.50.401(1), (2)(a) (2019).

against unreasonable searches and seizures." *See State v. O'Neill*, 148 Wn.2d 564, 584, 62 P.3d 489 (2003).

"A search warrant may issue only upon a determination of probable cause." *State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995). An affidavit establishes probable cause if it sets forth "facts sufficient for a reasonable person to conclude the defendant probably is involved in criminal activity." *State v. Huft*, 106 Wn.2d 206, 209, 720 P.2d 838 (1986). The facts in such an affidavit "must be based on more than suspicion or mere personal belief that evidence of the crime will be found on the premises searched." *State v. Vickers*, 148 Wn.2d 91, 108, 59 P.3d 58 (2002).

We generally review the issuance of a warrant for abuse of discretion and afford great deference to the issuing judge. *Vickers*, 148 Wn.2d at 108, *Huft*, 106 Wn.2d at 211. "However, at the suppression hearing the trial court acts in an appellate-like capacity; its review, like ours, is limited to the four corners of the affidavit supporting probable cause." *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). Correspondingly, "the trial court's assessment of probable cause is a legal conclusion we review de novo." *Neth*, 165 Wn.2d at 182.

If a warrant is overbroad, then we must examine whether the valid portions may be severed from the invalid portions. *State v. Maddox*, 116 Wn. App. 796, 805, 67 P.3d 1135 (2003), *aff'd*, 152 Wn.2d 499, 98 P.3d 1199 (2004)). The severability doctrine operates to suppress evidence seized pursuant to the flawed part of the warrant, but to save evidence seized pursuant to the valid portion of the warrant from suppression. *State v. Perrone*, 119 Wn.2d 538, 556, 834 P.2d 611 (1992). Five factors, set out in *State v. Maddox*, determine whether the valid portions of a warrant may be severed from the invalid portions:

> (1) [T]he warrant must lawfully have authorized entry into the premises; (2) the warrant must include one or more particularly described items for which there is

9

probable cause; (3) the part of the warrant that includes particularly described items supported by probable cause must be significant when compared to the warrant as a whole; (4) the searching officers must have found and seized the disputed items while executing the valid part of the warrant; and (5) the officers must not have conducted a general search, *i.e.*, one in which they "flagrantly disregarded" the warrant's scope.

*State v. Temple*, 170 Wn. App. 156, 163, 285 P.3d 149 (2012).

B. Application

Here, the search of Purves' car was based on probable cause that the car contained evidence of two crimes: use of drug paraphernalia and simple drug possession. We hold that regardless of *Blake*'s effect on the drug possession statute, the officers still had a sufficient basis to search the car for evidence of use of drug paraphernalia.

Although the parties center their arguments on the severability doctrine, we agree with the trial court that this is not the correct analysis because the warrant here was not overly broad and it described with particularity the area to be searched and the items to be seized.[5] The evidence sought under each crime was essentially identical, and was contained within the same location. This is because the illegal drugs observed in Purves' car were necessary not only to the State's ability to prove the crime of unlawful possession of a controlled substance under former RCW 69.50.4013 (2017), but also to prove the crime of use of drug paraphernalia under former RCW

---

[5] Even if the severability doctrine applied here, Purves' argument would not succeed. First, officers had probable cause to believe drug paraphernalia was contained in the car because they could see it from outside the car. Second, the warrant described with particularity that officers were to seize "[a]ll drug paraphernalia including but not limited to pipes, lighters, syringes, foil, baggies, straws, and spoons." CP at 23. Third, the paraphernalia portion of the warrant was significant in the context of the whole warrant, despite Purves' argument that simple possession, a felony, was "the more serious crime" and was "the primary goal" of searching officers. Br. of Appellant at 39. Fourth, officers found drugs, paraphernalia, cash, and a logbook within the scope of the valid search for paraphernalia. Finally, this was not a general search as there is no evidence the officers exceeded the warrant's scope.

69.50.412(1) (2019). *See State v. O'Meara*, 143 Wn. App. 638, 642-44, 180 P.3d 196 (2008) (reversing trial court's dismissal of paraphernalia charge because marijuana residue on pipe and tin found in defendant's backpack supported inference that defendant used items to store and ingest marijuana).

First, possession of a controlled substance required a showing that a defendant (1) "possess[ed]" (2) "a controlled substance" (3) without having "a valid prescription" or other authorization. Former RCW 69.50.4013 (2017). Second, use of drug paraphernalia required showing the defendant (1) "use[d]" (2) "drug paraphernalia" as defined in RCW 69.50.102 (a) "to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance other than marijuana." Former RCW 69.50.412(1) (2019). Under the second element, courts consider both "[t]he proximity of the object to controlled substances" and "[t]he existence of any residue of controlled substances on the object" "in addition to all other logically relevant factors" to determine whether a particular item is drug paraphernalia. RCW 69.50.102(b)(4), (5).

Here, officers looking into Purves' car could see a brown substance inside a plastic baggy—the baggy qualifies as paraphernalia only if the brown substance inside is an illegal drug. Thus, both the baggy and the substance are evidence that Purves violated the drug paraphernalia statute. The same can be said of the tooters, black case, and tin foil that officers observed from outside the car. Therefore, when the warrant authorized seizure of "[a]ll controlled substances including but not limited to methamphetamine, prescription pills, and heroin" as well as "[a]ll drug paraphernalia including but not limited to pipes, lighters, syringes, foil, baggies, straws, and

spoons" it authorized seizure of items supporting the drug paraphernalia offense. CP at 23. Without an overbroad warrant, we need not consider severability.

Nor must we reach the *Blake* issue in this case. The warrant here was supported by probable cause that Purves violated the use of drug paraphernalia statute, and we affirm the trial court on that basis.

## III. EXCESSIVE SENTENCE UNDER RCW 9A.20.021

Purves argues that his sentence exceeds the statutory maximum sentence under RCW 9A.20.021. That statute provides,

> (1) Felony. Unless a different maximum sentence for a classified felony is specifically established by a statute of this state, no person convicted of a classified felony shall be punished by confinement or fine exceeding the following:
>
> . . . .
>
> (b) For a class B felony, by confinement in a state correctional institution for a term of ten years, or by a fine in an amount fixed by the court of twenty thousand dollars, or by both such confinement and fine.

RCW 9A.20.021. Possession with intent to distribute Schedule I and II narcotics is identified as a class B felony in RCW 69.50.401(2)(a). *See also* RCW 69.50.101(gg) (defining "narcotic drug" to include opiates); *Drug Scheduling*, DRUG ENFORCEMENT AGENCY (Jul. 10, 2018), https://www.dea.gov/drug-information/drug-scheduling (listing heroin as Schedule I and fentanyl as Schedule II). Thus, the statutory maximum is ten years or 120 months confinement, but Purves was sentenced to 120 months confinement for each count (concurrent) plus 12 months of community custody. The State concedes that this exceeds the statutory maximum and that the case should be remanded to correct the sentence. Based on the State's concession, we remand the case with instructions to reduce Purves' term of community custody to zero, leaving him with the maximum sentence for his crimes.

No. 56600-1-II

## CONCLUSION

We affirm the trial court's denial of Purves' motion to suppress evidence, and we remand the case with instructions for the trial court to remove the 12-month community custody period from Purves' sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Cruser, A.C.J.

We concur:

Price, J.

Che, J.

13